BDM Investments v. Lenhil, Inc., 2012 NCBC 7.

STATE OF NORTH CAROLINA

COUNTY OF BRUNSWICK

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 449

BDM INVESTMENTS, KENNETH W.
KING, JR., LEAH L. KING and
RICHARD A. MU,

          Plaintiffs,

      v.

LENHIL, INC.; LENNON HILLS,
LLC; GLENN HOLLINGSWORTH;
EDWIN L. BURNETT, III; VIABLE
CORP.; GARY LAWRENCE; PAM
LAWRENCE; LAWRENCE SALES &
MARKETING GROUP, LLC; KEITH
MEYERS; MEYERS APPRAISAL
SERVICES, LLC; DANIEL HILLA,
III; ALTON LENNON; MARTIN J.
EVANS and HOMEPLACE REALTY
ASSOCIATES, INC.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1} THIS MATTER is before the Court on a collection of motions attacking the pleadings. Defendants have a series of motions based on Rules 8, 9, and 12 of the North Carolina Rules of Civil Procedure ("Rule(s)") challenging or seeking to strike portions of the Second Amended Complaint. Plaintiffs move to dismiss one counterclaim pursuant to Rule 12(b)(6) ("Plaintiffs' Motion"). The Defendants' motions are GRANTED in part and DENIED in part. Plaintiffs' Motion is GRANTED.

*Bowden & Laws, PC by Edwin W. Bowden for Plaintiffs BDM Investments, Kenneth W. King, Jr., Leah L. King, and Richard A. Mu.*

*Hodges & Coxe, P.C. by C. Wes Hodges, II and Sarah Reamer for Defendants Lenhil, Inc., Lennon Hills, L.L.C., Edwin L. Burnett, III, Viable Corp., and Daniel Hilla.*

*Toll & Potter, PLLC by Samuel B. Potter for Defendant Glenn Hollingsworth.*

*Cranfill Sunmer Hartzog, LLP by Richard T. Boyette for Defendant Gary Lawrence.*

*Nexsen Pruet, PLLC by R. Daniel Boyce for Defendants Pam Lawrence and Lawrence Sales & Marketing Group, L.L.C.*

*Kurt B. Fryar, Attorney at Law by Kurt B. Fryar for Defendant Alton Lennon.*

*Baker, Jones, Daly & Carter PA by Ronald G. Baker for Defendants Martin J. Evans and Homeplace Realty Associates, Inc.*

Gale, Judge.

## I. INTRODUCTION

{2} Plaintiffs seek to recover damages and to rescind a purchase contract by which they invested in residential lots to be developed as a part of the Lennon Hills development in Brunswick County, North Carolina. Plaintiff BDM Investments ("BDM") is a partnership whose partners, the individual Plaintiffs, are all licensed North Carolina attorneys. Plaintiffs contend that each Defendant engaged in a conspiracy calculated to induce the purchase by fraud. Defendants challenge the fraud claims for lack of specificity and for lack of reasonable reliance. Plaintiffs contend that they are excused from proving reliance because their purchase was induced by Defendant Glenn Hollingsworth ("Hollingsworth") with whom they enjoyed a fiduciary relationship. Plaintiffs seek to impute Hollingsworth's liability to individual members of the conspiracy.

{3} Initially, Plaintiffs joined as Defendants essentially every individual or entity that had anything to do with or was necessary to complete the purchase in the Lennon Hills development. Several defendants were dismissed between the

time of the original Complaint and the filing of the Second Amended Complaint. Plaintiffs' Second Amended Complaint has twenty (20) causes of action. Each rests on broad allegations, many of which are alleged only on information and belief. Plaintiffs contend that they should be allowed to pursue discovery based on their broad allegations and should be expected to further narrow their claims only after such discovery. Defendants contend that Plaintiffs have not alleged and cannot allege sufficient particularity to allow the broad claims to proceed. The various motions require the Court to grapple with defining an appropriate dividing line that affords Plaintiffs the pleading liberality demanded by the Rule 12(b)(6) standards while at the same time drawing reasonable limits to avoid imposing the unfair burden and expense of litigation upon those whose fault for the failed real estate transaction is based on supposition rather than reasonable assertion of fact. That task is made even more difficult in this case where: (1) the genesis of the conspiracy is alleged to have arisen because of harms directed at and suffered by persons who are neither plaintiffs in this action nor have been alleged to have any connection to the Plaintiffs; and (2) the case arises in the context of licensed attorneys who invested several hundreds of thousands of dollars with little or no due diligence.

{4} The Court concludes that some claims should proceed toward discovery, but the allegations, even broadly read, are insufficient to justify keeping certain Defendants in the case. Further, the claims should be narrowed for those Defendants who remain. The defamation counterclaim against the Plaintiffs should be dismissed.

## II. PROCEDURAL BACKGROUND

{5} Plaintiffs filed their Complaint in the Brunswick County Superior Court on February 28, 2011. The matter was designated as a Complex Business Case by Order of Chief Justice Sarah Parker dated April 8, 2011 and assigned to the undersigned by Order dated April 14, 2011. Motions attacked the initial Complaint. The Second Amended Complaint was filed on August 8, 2011.

{6} Prior to filing their Second Amended Complaint, Plaintiffs voluntarily dismissed Wells Fargo & Company; Wells Fargo Bank, N.A.; Wells Fargo Financial Mortgage, L.L.C.; Wachovia Corporation; Wachovia Bank, N.A.; Wachovia Mortgage Corporation; Wachovia Affordable Housing Corporation; Exit Realty 1st, LLC; Exit Realty and Associates, Inc.; Exit Realty Seaside, LLC; Kelly K. Johnson; Rosalind Johnson; and Flo Smith. Plaintiffs later voluntarily dismissed Nicholas R. Frank and Nick Frank who had been included in the Second Amended Complaint.

{7} Defendants Lenhil, Inc. ("Lenhil"), Lennon Hills, LLC ("Lennon Hills"), Edwin L. Burnett, III ("Burnett"), Viable Corp. ("Viable"), and Daniel Hilla ("Hilla") have asserted a defamation counterclaim. Plaintiffs' Motion attacking that claim was timely filed on July 22, 2011.[1]

{8} Following several Answers and pre-answer motions,[2] the Court determined it should address the common issues on a consolidated basis. To that end, the Court directed that all motions based on the pleadings be filed by a date certain and that the Defendants prepare a consolidated brief, supplemented by individual briefs only where necessary.

{9} On or before September 30, 2011, each of the named Defendants submitted motions pursuant to Rules 8, 9, and 12. Specifically, Defendants Alton Lennon ("Lennon"), J. Martin Evans ("Evans"), Homeplace Realty Associates Inc. ("Homeplace"), Hollingsworth, Pam Lawrence, Lawrence Sales & Marketing, LLC ("Lawrence S&M"), and Gary Lawrence seek to dismiss all claims against them pursuant to Rule 12(b)(6) and to have certain portions of the Second Amended Complaint stricken pursuant to Rule 12(f). Defendants Lenhil, Lennon Hills, Burnett, Viable, and Hilla have similar motions but additionally assert a Motion for Judgment on the Pleadings pursuant to Rule 12(c).

---

[1] The Court has indicated that motions addressed to the initial Complaint will be deemed as having also been addressed to the Second Amended Complaint.

[2] To date, every named Defendant has either filed an Answer or pre-answer motion to dismiss with the exception of Keith Meyers and Meyers Appraisal Services, LLC, whom Plaintiff has not yet served. This Order will not address claims asserted against the unserved Defendants.

{10} These various motions have been fully briefed, the Court heard extensive oral arguments, and the motions are ripe for disposition.

### III. STATEMENT OF FACTS

{11} The following facts are taken from the pleadings as well as documents they incorporate,[3] construed favorably to the moving party with reasonable inferences not inconsistent with the facts alleged, but without being bound by unwarranted legal conclusions. The Court does not make findings of facts in connection with motions to dismiss as such motions do "not present the merits, but only [determine] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Group, Inc.,* 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). However, it is appropriate for the Court to state facts accepted from the pleadings that are relevant to the legal determinations the Court is called upon to make.

### A. The Parties

{12} Plaintiff BDM is a general partnership organized and existing under the laws of the State of North Carolina for the purpose of owning office facilities and holding certain other real estate. (Second Am. Compl. ("2nd Am. Compl.") ¶¶ 1, 3.) BDM filed a Certificate of Assumed Name in Onslow County, North Carolina on April 15, 1993, the county in which their law firm and the individual partners practice. (2nd Am. Compl. ¶ 3.) There is no allegation that Plaintiffs have filed an assumed name certificate in Brunswick County. There is also no allegation by Defendants that such a certificate has not been filed.

---

[3] Documents referenced in and attached to pleadings can be considered on a motion to dismiss without converting a 12(b)(6) motion into a motion for summary judgment. *See Brackett v. SGL Carbon Corp.,* 158 N.C. App. 252, 255, 580 S.E.2d 757, 759 (2003); *Tomlin v. Dylan Mortgage, Inc.,* 2000 NCBC 9, fn. 1 (N.C. Super. Ct. 2000), http://www.ncbusinesscourt.net/opinions/2000%20NCBC%209.htm.

{13} Plaintiffs Kenneth W. King ("Kenneth King") and Leah L. King ("Leah King") are licensed North Carolina attorneys and are citizens and residents of New Hanover County, North Carolina. Plaintiff Richard A. Mu ("Mu") is a licensed North Carolina attorney and a citizen and resident of Onslow County, North Carolina. The Kings and Mu are the sole BDM partners and are collectively referred to as the "Individual Plaintiffs."

{14} Defendants Hilla, Hollingsworth,[4] and Lennon are citizens and residents of New Hanover County, North Carolina. Defendants Burnett, Pam Lawrence, and Gary Lawrence are citizens and residents of Brunswick County, North Carolina. Gary Lawrence is a licensed North Carolina attorney. Defendant Evans is a citizen and resident of Pender County, North Carolina and a licensed North Carolina real estate broker.

{15} Defendant Homeplace is a corporation organized and existing under the laws of the State of North Carolina doing business in Pender County, North Carolina. Evans owns and operates Homeplace.

{16} Defendant Lawrence S&M is a limited liability company organized and existing under the laws of the State of North Carolina doing business in Brunswick County, North Carolina. Pam Lawrence owns and operates Lawrence S&M and is Gary Lawrence's wife.

{17} Defendants Lenhil and Lennon Hills are corporations organized and existing under the laws of the State of North Carolina doing business in Brunswick County, North Carolina. Lenhil and Lennon Hills develop and sell real property, including tracts of land and homes in residential subdivisions. Defendants Burnett and Hilla are Lenhil's sole shareholders. Defendants Burnett and Lennon are Lennon Hills's sole shareholders.

---

[4] Defendant Hollingsworth passed away during the pendency of this litigation. A motion to substitute a new party is pending.

{18} Defendant Viable is a corporation organized and existing under the laws of the State of North Carolina doing business in Brunswick County, North Carolina. Burnett and Lennon are Viable's sole shareholders.

{19} Lenhil, Lennon Hills, Viable, Burnett, and Hilla are collectively referred to as the "Lennon Hills Defendants."

B. Background Factual Allegations Related to the Lennon Hills Property[5]

{20} The Second Amended Complaint recites at length allegations of alleged wrongdoing perpetrated by at least some of the Defendants on non-party Charles Green ("Green").[6] Plaintiffs allege that these facts led Hollingsworth and those with whom he conspired to obtain needed funds by inducing Plaintiffs to execute their lot purchase agreement in December 2006. In substance, those allegations include:

(a) In 1995, Defendant Lennon was a licensed North Carolina attorney who Green retained to provide real estate investment advice. (2nd Am. Compl. ¶¶ 25–26.) Pursuant to Lennon's advice, Green acquired a twenty-five percent (25%) interest in Leland Development, a real estate development company managed by Viable and a company called Leland Ventures. Leland Development later purchased a 199 acre tract in Brunswick County, North Carolina ("Leland Tract"). (2nd Am. Compl. ¶¶ 36–37.) On May 26, 2005, Leland Development transferred all of its real estate by two (2) deeds to The Pastures, an entity owned and operated by Viable, Burnett, and Lennon. (2nd Am. Compl. ¶ 39.) Thereafter, The Pastures sold the Leland Tract in two (2) pieces to Hilla through Kardan Holdings, an entity operated by Hilla

---

[5] Further particular facts pertinent to individual claims are presented in the analysis of those claims.

[6] It is evident that the basis for those allegations are findings of fact issued in a disciplinary proceeding brought against Alton Lennon by the North Carolina State Bar. The transcript of that proceeding is attached as Exhibit D to Plaintiffs' Brief in Opposition to Defendant Alton Lennon's Motions to Strike and Dismiss.

and Hilla Building, Inc. for a total of $3,172,000.00. Lennon, Burnett, and Viable failed to disclose the transaction to Green, falsely represented that Leland Development had sold the entire Leland Tract for $1,958,422.00, and transferred $487,105.00 to Green as consideration for his twenty-five percent (25%) interest in the company. (2nd Am. Compl. ¶¶ 41–36.) The Pastures then used $850,000.00 of the sales proceeds concealed from Green to purchase the Lennon Hills property. (2nd Am. Compl. ¶ 47.) The Pastures transferred the Lennon Hills property to Lennon Hills, L.L.C., and Lennon Hills, L.L.C. transferred the property to Lenhil on November 22, 2006. Lenhil, Hilla, and Burnett then borrowed $2,650,000.00 from BB&T using the Lennon Hills property as collateral, and Lennon filed a deed of trust on the property in his name and on behalf of Lennon Hills, L.L.C. in the amount of $15,000,000.00. (2nd Am. Compl. ¶¶ 51–52.)

(b) In 1999, Lennon recommended that Green purchase an eight (8) acre tract in Brunswick County, North Carolina ("Cedar Greens Tract"). In connection with the sale, Lennon misappropriated approximately $30,000.00 of the purchase price. (2nd Am. Compl. ¶¶ 28– 30.) Later that year, Lennon misappropriated approximately $50,000.00 in connection with the sale of two (2) Brunswick County lots held by Lennon as trustee for Green. (2nd Am. Compl. ¶¶ 31– 32.)

(c) Also in 1999, Lennon sold Green a ten percent (10%) share of the Fish Factory restaurant located in Brunswick County, North Carolina. In 2006, Lennon and Burnett allegedly concealed material facts in connection of the sale of the Fish Factory causing Green to receive less than full value for his interest in the company. (2nd Am. Compl. ¶¶ 53– 58.)

{21} Plaintiffs assert that these circumstances led the Defendants to conspire to obtain funds from Plaintiffs in order to generate funds to avoid having Green present claims based on wrongs he had discovered. Plaintiffs allege that they closed their purchase in December 2006, while also adopting the findings of the State Bar in the disciplinary proceeding which recite that Green did not learn of the fraud

allegedly perpetrated upon him until sometime in 2007.  (2nd Am. Compl. ¶¶ 59–60.).

{22}  Plaintiffs' Second Amended Complaint also alleges wrongs perpetuated on another non-party.  They allege that Defendants also fraudulently induced purchases in February of 2007 by a dental practice known as T&T Partnership and used the sales proceeds from that transaction to pay Green.  (2nd Am. Compl. ¶ 61.)

C.  Factual Allegations Related to the Plaintiffs' Purchase

{23}  Plaintiffs Kenneth King and Mu retained Hollingsworth in the early 1990s in his capacity as a certified public accountant to serve as their personal and business financial advisor.  (2nd Am. Compl. ¶¶ 65–66.)  In 2001, Hollingsworth began providing the same services to Leah King.  (2nd Am. Compl. ¶ 68.)  In that role, Hollingsworth regularly prepared Kenneth and Leah King's tax returns and provided financial advice on personal matters and on matters related to BDM and the law firm of Brumbaugh Mu & King.[7]  (2nd Am. Compl. ¶¶ 65, 68, 70.)

{24}  In 2004, Hollingsworth informed Kenneth King that he had sold his accounting business and had secured a real estate license.  (2nd Am. Compl. ¶ 71.)  He told Kenneth King that he would still be serving his client's financial interests by including select clients in favorable investment opportunities.  (2nd Am. Compl. ¶ 71.)

{25}  Plaintiffs allege that Hollingsworth continued to occupy a position of special trust and confidence as a result of his prior position as their trusted financial advisor.  They contend that Hollingsworth and the other Defendants conspired to take advantage of that trust and confidence when fraudulently

---

[7]  The Individual Plaintiffs are all partners in the law firm of Brumbaugh Mu & King, a partnership apparently separate and distinct from Plaintiff BDM.

inducing them to purchase the Lennon Hills lots.[8]

{26} In the fall of 2006, Hollingsworth contacted Kenneth King and presented him with an "unbelievable opportunity." (2nd Am. Compl. ¶ 73.) Hollingsworth explained that he was contacting favored clients and close associates to solicit their participation in the purchase of certain real estate located in the Lennon Hills development in Brunswick County, North Carolina. (2nd Am. Compl. ¶ 73.) Hollingsworth told Kenneth King that he had personally invested his own funds in a substantial number of the Lennon Hills lots and represented that Lenhil and Lennon Hills would repurchase any lots acquired by the Plaintiffs at a higher price within twelve (12) months of purchase. (2nd Am. Compl. ¶¶ 75–76.)

{27} Hollingsworth advised Kenneth King that the Lennon Hills lots would be sold in ten (10) lot groups at $85,000.00 per lot for a total purchase price of $850,000.00. (2nd Am. Compl. ¶ 77.) Kenneth King agreed to purchase ten (10) lots and informed Hollingsworth that any purchase would be made through BDM. (2nd Am. Compl. ¶¶ 78, 85.)

{28} Plaintiffs allege that Hollingsworth had dominion and control over the transaction. They assert that they relied entirely on Hollingsworth who told Kenneth King that he would personally select the specific ten (10) lots for sale to BDM and take all necessary steps to consummate the transaction, including arranging financing in the form of a ninety percent (90%) loan with BDM paying a down payment of only ten percent (10%) of the purchase price. (2nd Am. Compl. ¶¶ 80–82.) The loan terms were to include an "interest only" repayment obligation in the first year with Lenhil and Lennon Hills paying all of the first year's interest. (2nd Am. Compl. ¶ 82.) Hollingsworth reiterated that Lenhil and Lennon Hills would repurchase the lots from BDM at a profit within twelve (12) months so that the favorable interest only financing with no cost to the Plaintiffs was only

---

[8] Plaintiffs separately assert that Lawrence had fiduciary duties as Plaintiffs' closing attorney. However, the central allegation regarding the conspiracy is that Hollingsworth was able to induce the purchase, that he chose and directed Gary Lawrence as the closing attorney because of Gary Lawrence's relationship with the developers, and that Plaintiffs did not deal directly with Gary Lawrence until the purchase was closed.

necessary for one (1) year.  (2nd Am. Compl. ¶ 82.)  The repurchase provision was not, however, referenced in the purchase contract or the closing documents.

{29}  On December 5, 2006, BDM signed a Home Site Purchase Agreement ("Purchase Agreement") with Lenhil and Lennon Hills for the purchase of ten (10) lots in the Lennon Hills subdivision.  (2nd Am. Compl. ¶ 87.)  Plaintiffs were presented with a layout of the subdivision on which Hollingsworth noted the specific lots that he had selected for the Plaintiffs to purchase, which plot Plaintiffs now claim had not been recorded in the Brunswick County Register of Deeds.  (2nd Am. Compl. ¶ 87.)  Plaintiffs were instructed to make and made an earnest money down payment of $30,000.00 to secure their right to purchase the lots.  (2nd Am. Compl. ¶ 87.)

{30}  BDM's $30,000.00 earnest money down payment was placed on deposit with Gary Lawrence who served as an escrow agent for the land sale transaction.  (2nd Am. Compl. ¶ 88.)  Gary Lawrence's position as escrow agent was clearly disclosed on the first page of the Purchase Agreement.  (2nd Am. Compl. Ex. B at 1.)  At Hollingsworth's direction, Gary Lawrence later served as BDM's closing attorney.  (2nd Am. Compl. ¶ 88.)  The closing documents referred to in the Second Amended Complaint reveal clearly that Gary Lawrence was both escrow agent and closing attorney, an act Plaintiffs now allege was malpractice, although they also contend that they were not aware of Lawrence's prior relationship with Hollingsworth and the Lennon Hills development, and contend that his dual role constituted an incurable conflict of interest that was not discovered until well after the Plaintiffs closed on the Lennon Hills lots and within the applicable statute of limitations.  (2nd Am. Compl. ¶ 88.)

{31}  Shortly after signing the Purchase Agreement, Hollingsworth called Kenneth King and informed him that Cooperative Bank, Hollingsworth's initial selected lender, was "moving slowly" in providing financing on the previously promised terms.  (2nd Am. Compl. ¶ 89.)  Hollingsworth later secured financing from Wachovia.  Plaintiffs never met with or requested to meet with or speak to any potential lenders.  (2nd Am. Compl. ¶ 89.)  Plaintiffs allege that they have now

learned that Cooperative Bank declined to extend financing because the loan terms sought by Hollingsworth requiring a ten percent (10%) down payment and a ninety percent (90%) loan were inappropriate for the sale of undeveloped lots and outside the scope of accepted lending principles, as a result of which the FDIC had directed Cooperative Bank not to make loans for undeveloped lots on such terms. (2nd Am. Compl. ¶ 90.)

{32} Hollingsworth later contacted Kenneth King advising him of a problem with the appraisal. (2nd Am. Compl. ¶ 91.) Hollingsworth told King that the selected appraiser intended to charge $400.00 per lot to inspect the ten (10) lots in bulk. (2nd Am. Compl. ¶ 91.) Hollingsworth said the price was "excessively high" and then secured Keith Meyers and Meyers Appraisal Services, LLC who agreed to appraise all ten (10) lots for a total fee of $2,000.00. (2nd Am. Compl. ¶ 91.) Plaintiffs contend that the bulk appraisal of undeveloped lots is a violation of regulatory requirements. Despite never seeing the appraisal before the closing, Plaintiffs contend that they relied on its contents in deciding whether to purchase the Lennon Hills lots.[9] (2nd Am. Compl. ¶ 91.) Plaintiffs did not participate or seek to participate in the appraisal process in any way. (2nd Am. Compl. ¶ 91.)

{33} Plaintiffs allege that the Defendants desired for the first appraiser to value each lot at $85,000.00, but when the appraiser refused because there were no "comparables" for the lots upon which to base such a valuation, the Defendants orchestrated their own comparables by selling several single lots to three (3) individual lot purchasers at $85,000.00 per lot. (2nd Am. Compl. ¶¶ 92–93.) The individual lots were sold to Terry Hollingsworth, Barbara Grela, and William K. Rucker, all of whom have previous relationships with one or more of the

---

[9] Plaintiffs do not allege that they contracted for these appraisals or that they were contracted for on anyone's behalf other than the lender. *See Allran v. Branch Banking & Trust*, No. 10-CVS-5482, 2011 WL 2652133, at *5 (N.C. Super. Ct. July 6, 2011); *See also Camp v. Leonard*, 133 N.C. App. 554, 559, 515 S.E.2d 909, 913 (1999). The Court need not here address the question of whether the Plaintiffs have any claim against the appraiser who has not been served or against the lender which is not a Party.

Defendants.[10]  (2nd Am. Compl. ¶¶ 94–96.)  Once the "comparables" were obtained, Defendants contacted Keith Meyers who agreed to appraise the lots in bulk at a price of $85,000.00 per lot.  (2nd Am. Compl. ¶ 97.)  Plaintiffs allege there were no further single lot sales after the Defendants created the "comparables" necessary to establish the $85,000.00 lot price.  (2nd Am. Compl. ¶ 98.)

{34}  After Hollingsworth completed all of the paperwork related to the sale, he scheduled a meeting with Kenneth King in a parking lot where a "closing" of sorts occurred.  (2nd Am. Compl. ¶ 101.)  No attorneys appeared at the closing and only Hollingsworth and Kenneth King were present.  (2nd Am. Compl. ¶ 101.)  Plaintffs do not allege that they met with or asked to meet with their closing attorney.  In fact, Plaintiffs contend they only later learned that Gary Lawrence was the closing attorney.  They also contend that he should have been present at the closing.  (2nd Am. Compl. ¶ 101.)  Plaintiffs also allege that documents essential to the closing were notarized by Chantel L. Lane, indicating that Kenneth King had signed those documents before a notary when in truth he had not.  (2nd Am. Compl. ¶ 101.)  There is no allegation that Plaintiffs questioned the atypical closing process at the time.  (*See* 2nd Am. Compl. ¶ 101.)

{35}  At the parking lot closing, Kenneth King provided Hollingsworth with a check for $63,526.48 representing the closing costs and the remainder of the ten percent (10%) down payment.  (2nd Am. Compl. ¶ 104.)

{36}  The HUD Settlement Statement ("Settlement Statement") for the purchase, which Kenneth King signed, identifies commission payments to Lawrence

---

[10]  Terry Hollingsworth is the brother of Defendant Hollingsworth; Barbara Grela allegedly has a long-standing business relationship with Gary and Pam Lawrence; and William Rucker is alleged to have a longstanding business relationship with "the defendants."  (2nd Am. Compl. ¶¶ 94–96.) Plaintiffs assert that the sales, established by public records of which the Court can take judicial notice, were sold at the $85,000.00 contract price and were not legitimate sales.  The Defendants counter that should the Court accept matters from the public record, that same public record would also demonstrate that borrowed funds were used to consummate the purchases, and as a result of which the Court should conclude the sales were legitimate sales for an appraiser to consider.  The Court elects not to consider either of these allegations upon a motion to dismiss, and therefore accepts, for purposes of these motions only, that Plaintiffs have adequately alleged that the appraisals were inflated.  Obviously, if Defendants are correct, Plaintiffs will have to contend with these proof problems in later responding to motions for summary judgment.

S&M and Viable in the amount of $42,500.00 each.[11]  Plaintiffs allege they were led to believe that the $85,000.00 represented a standard ten percent (10%) real estate sales commission which was to be split between two (2) realtors.  Plaintiffs now allege, on information and belief, that the payment to Viable was either a secret payment made to Hollingsworth as a commission for selling the ten (10) lots to Plaintiffs, a kickback payment to Lenhil, Lennon Hills, Burnett, Hilla, and/or Lennon to be used to pay the first year's interest payment on the BDM loan, or simply a means of improperly funneling money to the various Defendants.  (2nd Am. Compl. ¶ 108.)  Plaintiffs contend that they were unaware of Pam Lawrence's interest in Lawrence S&M and her marriage to Gary Lawrence, although there is also no allegation that Plaintiffs ever inquired about a possible relationship between them.  Plaintiffs further assert that Gary Lawrence failed to disclose the commission paid to Lawrence S&M, allege on information and belief that Lawrence S&M performed no services entitling it to a commission, and believe that the funds were passed to Lawrence S&M as a means of improperly funneling funds to members of the Defendants' conspiracy to take advantage of the Plaintiffs.  (2nd Am. Compl. ¶¶ 111–112.)

{37}  During all relevant times, Gary Lawrence was a tenant in a building owned by Viable and/or Burnett and Lennon, and based on his prior relationship with Viable, Gary Lawrence knew Viable was not a licensed realtor or agency entitled to a commission for the sale.  (2nd Am. Compl. ¶ 114.)  Again, although it appears plainly on the Settlement Statement, Plaintiffs contend that Gary Lawrence failed to disclose the commission paid to Viable.  (2nd Am. Compl. ¶ 114.)

{38}  When receiving the Settlement Statement, Kenneth King and BDM discovered that a payoff of a first mortgage owed to BB&T in the amount of $347,632.49 had been extracted from the loan proceeds/purchase price paid by BDM.  (2nd Am. Compl. ¶ 105.)  Plaintiffs contend that Hollingsworth should have

---

[11]  The record does not make clear what documents Kenneth King received in the closing package or in March 2007 when he received a signed copy of the fully executed Settlement Statement.

informed them that the Lennon Hills lots were encumbered by a first mortgage. (2nd Am. Compl. ¶ 105.)

{39} Plaintiffs also allege Lennon filed a lien on the Lennon Hills development in the amount of $15,000,000.00 in the Brunswick County Register of Deeds. (2nd Am. Compl. ¶ 107.) Plaintiffs allege they did not learn of this lien until much later when preparing for the filing of their Complaint.

{40} To date, Plaintiffs allege that they have expended more than $300,000.00 by making payments on the loans on the "nearly worthless" Lennon Hills lots. (2nd Am. Compl. ¶ 124.) Plaintiffs now assert that they would have never purchased the ten (10) lots had they known about the extensive misrepresentations, conflicts of interest, hidden shared interests, conspiracies, banking violations, appraisal violations, and other information now known. (2nd Am. Compl. ¶ 123.) Plaintiffs still owe the entire $765,000.00 principal balance of the Wachovia loan. (2nd Am. Compl. ¶ 124.)

## IV.  STANDARD OF REVIEW FOR MOTIONS TO DISMISS OR JUDGMENT ON THE PLEADINGS[12]

{41} The appropriate inquiry on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987); *see Sutton v. Duke*, 277 N.C. 94, 102–03, 176 S.E.2d 161, 166 (1970). The standard of review for a Rule 12(c) motion is the same. *A-1 Pavement Marking, LLC v. APMI Corp.*, 2008 NCBC 13 ¶ 35 (N.C. Super. Ct. Aug. 4, 2008), http://ncbusinesscourt.net/opinions/2008_NCBC_13.pdf. The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their

---

[12] The Court separately addresses the Rule 12(f) standard of review when discussing the motion to strike after its analysis of the 12(b)(6) motions.

lack of merit.*" Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). Where "the Court also can construe the plain and unambiguous language of a contract to determine if it has been breached, judgment on the pleadings may be appropriate.*" Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC 5 ¶ 5 (N.C. Super. Ct. May 26, 1999), http://ncbusinesscourt.net/opinions/ 1999%20NCBC%205.htm.

## V. ANALYSIS OF THE MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

### A. Defendants' Motions to Dismiss

{42} Defendants' motions ask that the Second Amended Complaint be dismissed in its entirety, asserting that: (1) the Individual Plaintiffs' claims should be dismissed for lack of standing as the claims must be brought solely by the partnership; (2) all claims are time-barred by the statute of limitations; (3) BDM is foreclosed from asserting any claims due to its failure to file a Certificate of Assumed Name in Brunswick County pursuant to N.C.G.S. § 66-68; and (4) Plaintiffs' remaining claims lack factual allegations sufficient to withstand scrutiny under Rules 12 (c) and 12(b)(6).[13]

### 1. The Individual Plaintiffs Lack Standing

{43} Defendants assert that the Individual Plaintiffs lack standing to pursue individual claims because they have not alleged an injury separate and distinct from that suffered by BDM.

{44} "[W]hen property is owned by a partnership, the partnership is the real party in interest for purposes of pursuing a civil action pertaining to the partnership property." *Ron Medlin Const. v. Harris*, 704 S.E.2d 486, 491, 2010 N.C.

---

[13] Defendants move to dismiss the legal malpractice claim against Gary Lawrence based on the statute of limitations, but do not otherwise test the legal sufficiency of the claim by the current motions.

LEXIS 1079 (2010) (citing *Roller v. McKinney*, 159 N.C. 319, 320–21, 74 S.E. 966, 966–67 (1912) and *Godwin v. Vision*, 251 N.C. 326, 327, 111 S.E.2d 180, 181 (1959) (*per curiam*)). The individual partners may not sue in their own name, *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000), unless "(1) a plaintiff alleges an injury 'separate and distinct' to himself, or (2) the injuries arise out of a 'special duty' running from the alleged wrongdoer to the plaintiff." *Id.* at 335 (analogizing the relationship of partners and the partnership to corporate shareholders and the corporation). Under the special duty exception, the duty owed by the wrongdoer to the individual partner must be different from the duty owed to the partnership. *Gaskin v. J.S. Proctor Co., LLC*, 196 N.C. App. 447, 675 S.E.2d 115 (2009).

{45} The Second Amended Complaint fails to allege an injury suffered by any Individual Plaintiff that is separate and distinct from the injury suffered by BDM and contains no allegations sufficient to establish a special duty running from the Defendants to the Individual Plaintiffs.

{46} The Individual Plaintiffs' claims should then be DISMISSED.


2. The Partnership Has Failed to State Claims Against Pam Lawrence, Lawrence S&M, Evans, and Homeplace


{47} Plaintiffs seek to impose liability on Pam Lawrence, Lawrence S&M, Evans, and Homeplace, relying on the broad conclusory assertion that they were part of the conspiracy because they benefited from the transaction. However, the Second Amended Complaint does not allege any underlying factual predicate adequate to tie them to the conspiracy.

{48} At oral argument, Plaintiffs admitted that Pam Lawrence did not make any actionable misrepresentations in connection with the sale to BDM, but they believe liability should be imposed based on her awareness of how the lot transaction unfolded and her participation in the sales proceeds. Without a

predicate act tying Pam Lawrence to the alleged conspiracy, all claims against her and Lawrence S&M should be DISMISSED.

{49} Plaintiffs have likewise failed to allege a factual basis for imposing liability upon Evans and Homeplace. There are no allegations that Evans made any specific misrepresentations in connection with the sale to BDM. In fact, Plaintiffs' allegations indicate that Hollingsworth concealed his allegedly improper commission from Evans, Homeplace, and the Exit defendants. (2nd Am. Compl. ¶ 110.) Plaintiffs' claims against Evans and Homeplace should be DISMISSED.

### 3. Some But Not All Claims Against Remaining Defendants Are Barred by the Statute of Limitations[14]

{50} Defendants assert that Plaintiffs' claims for negligence, gross negligence, civil conspiracy, conversion, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment are time-barred by the applicable three (3) year statute of limitations. They likewise contend that Plaintiffs' claims for fraud, negligent misrepresentation, and constructive fraud are barred because the Plaintiffs should have discovered facts giving rise to those claims more than three (3) years before filing this lawsuit.

{51} Whether a statute of limitations defense should be resolved by a Rule 12(b)(6) motion or must await a Rule 56 motion for summary judgment depends on whether the facts necessary to adjudicate the defense are demonstrated by the complaint itself or whether additional evidence must be considered. "A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) (citation omitted).

---

[14] This section of the Memorandum addresses the limitations period that controls claims stated against the Defendants individually. As noted in a subsequent section, there are factual disputes as to whether a ten (10) year limitation period must be applied to breach of fiduciary claims against Hollingsworth and, therefore, to conspiracy claims grounded on that breach.

a. Plaintiffs Concede that the Negligence, Gross Negligence, Conversion, and Breach of Contract Claims Against All But Lenhil Are Time-Barred

{52} North Carolina law provides a three (3) year statute of limitations for claims based on negligence, gross negligence, conversion, breach of contract, and breach of implied duty of good faith and fair dealing.  N.C. GEN. STAT. § 1-52 (2011).  When Plaintiffs discover the harm is generally irrelevant because under G.S. § 1-52, "the statute begins to run when the claim accrues; for breach of contract, the claim accrues upon the breach." *Miller v. Randolph*, 124 N.C. App. 779, 781, 478 S.E.2d 668, 670 (1996).

{53}  Defendants assert that the harm against BDM was complete by March 1, 2007, the date on which Plaintiffs closed the lot purchase.  Plaintiffs filed this action on February 28, 2011, almost four (4) years later.

{54}  In Plaintiffs' Brief in Response to Defendants' Consolidated Brief Supporting Motions Related to Plaintiffs' Second Amended Complaint ("Pls.' Resp. Br.") and during oral argument, Plaintiffs conceded that their claims for negligence, gross negligence, and conversion are barred by the statute of limitations.  They should then be DISMISSED.

{55} Plaintiffs likewise concede that their claims for breach of contract and the implied duty of good faith and fair dealing are time-barred against all Defendants except the Lennon Hills Defendants.  These claims should then be DISMISSED.  As to the Lennon Hill Defendants, Plaintiffs contend that the contract action is ten (10) years because the claims are based on instruments signed under seal.  That claim is separately discussed below.

b. The Contract Claims Against the Lennon Hills Defendants Are Not Governed By A Ten Year Limitations Period and Should Be Dismissed and Quasi-Contract Claims Are Barred Because They Arise From the Contract

{56}  Plaintiffs seek the protection of the ten (10) year statute of limitations for documents under seal provided by G.S. § 1-47.2.  The Lennon Hills Defendants

advocate for application of the three (3) year statute of limitations in G.S. § 1-52(1) for actions "[u]pon a contract, obligation or liability arising out of contract, express or implied . . ." N.C. Gen. Stat. § 1-52(1) (2011).

{57} G.S. § 1-47.2 provides that an action "[u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto . . . ." must be filed within ten (10) years of execution. N.C. Gen. Stat. § 1-47(2) (2011). By its own terms, G.S. § 1-47(2) applies only to "sealed instrument[s]" and instruments conveying an "interest in real property." N.C. Gen. Stat. § 1-47(2) (2011). The Purchase Agreement does not satisfy either criterion.

{58} Plaintiffs have not alleged or established that the Purchase Agreement was, in fact, signed under seal. The copy of the Purchase Agreement attached as Exhibit B to the Second Amended Complaint includes the term "SEAL" next to the Purchaser's signature line but no similar notation accompanies the Seller's signature line. While an executed contract with the term "SEAL" "in brackets is sufficient to overcome the three (3) year statute of limitations applicable to breach of contract actions," *Biggers v. Evangelist*, 71 N.C. App. 35, 39, 321 S.E.2d 524, the statement logically applies only to a claim against the party whose signature was under seal, which here was only the purchaser and not the seller. Further, Plaintiffs have failed either to attach an executed copy of the contract or to allege that Lenhil or Lennon Hills signed the contract under seal or affixed to it a corporate seal. Accordingly, the Purchase Agreement is not properly considered a "sealed instrument" within the meaning of G.S. § 1-47(2).

{59} Further and independently, the Purchase Agreement is not an "instrument of conveyance of an interest in real property" within the meaning of G.S. § 1-47(2). An instrument of conveyance is a document which actually conveys an interest in real property, while a contract, such as the Purchase Agreement, merely evidences a promise to convey real property at a later date upon the satisfaction of certain conditions.

{60} "A conveyance of land can only be by deed." *New Home Bldg. Supply Co. v. Nations*, 259 N.C. 681, 683, 131 S.E.2d 425, 427 (citing *Ward v. Gay*, 137 N.C.

397, 49 S.E. 884 (1905)). "The word 'deed' ordinarily denotes an instrument in writing, signed, sealed, and delivered by the grantor, whereby an interest in realty is transferred from the grantor to the grantee." *Gifford v. Linnell*, 157 N.C. App. 530, 532, 579 S.E.2d 440, 442 (2008) (citation omitted). The Purchase Agreement is not a deed and it does not convey an interest in real property; it merely evidences intent to convey the property to BDM "[a]t the closing . . . by general warranty deed." (*See* 2nd Am. Compl. Ex. B ¶ 6.)

{61} Plaintiffs' contract based claims are governed by the three (3) year statute of limitations set forth in G.S. § 1-52(1). The claim for breach of contract against the Lennon Hill Defendants is then time-barred. It follows that Plaintiffs' claim for breach of the implied duty of good faith and fair dealing arising from that contract is also time-barred. These claims should be DISMISSED.

{62} A claim for unjust enrichment is an equitable claim based on a theory of quasi or implied contracts. *Atlantic and East Carolina Ry. Co. v. Wheatley Oil Co.*, 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004). "[I]f there is a contract between the parties [,] the contract governs the claim[,] and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 571, 369 S.E.2d 554, 554 (1988); *see Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 501 S.E.2d 690, 694 (1999) (indicating that "[i]t is well established that if there is a contract between the parties, the contract governs the claim and the law will not imply a contract . . . [In such cases] an action for breach of contract, rather than unjust enrichment, is the proper cause of action").

{63} It then follows that any unjust enrichment claim against the Lennon Hills Defendants should be DISMISSED.

c. Factual Issues Preclude Dismissing Plaintiffs' Claims for Misrepresentation, Fraud, Civil Conspiracy, and Unjust Enrichment Against Some Defendants

{64} Plaintiffs contend their claims for negligent misrepresentation, fraud, and constructive fraud are not barred by the three (3) year statute of limitations

because they did not discover the alleged wrongdoing until well after the closing and that the actions are timely when measured from the date of discovery. They further assert that their claims for civil conspiracy and unjust enrichment survive because they are predicated on the underlying acts of fraud, constructive fraud, and negligent misrepresentation.

{65} The statute of limitations for claims of negligent misrepresentation, fraud, and constructive fraud is three (3) years. N.C. GEN. STAT. § 1-52(5) (2011) (negligent misrepresentation); N.C. GEN. STAT. § 1-52(9) (2011) (fraud). However, a claim for negligent misrepresentation "does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." *Barger v. McCoy Hilliard & Parks*, 346 N.C. 605, 666, 488 S.E.2d 215, 224 (1997). "A cause of action alleging fraud is deemed to accrue upon discovery by the plaintiff of facts constituting the fraud." *Carlisle v. Keith*, 169 N.C. App. 674, 683, 614 S.E.2d 542, 548 (2005). "Where a person is aware of facts and circumstances which, in the exercise of due care, would enable him or her to learn of or discover the fraud, the fraud is discovered for the purposes of the statute of limitations." *Jennings v. Lindsey*, 69 N.C. App. 710, 715, 318 S.E.2d 318, 321 (1984) (citations omitted). "'Discovery' is defined as actual discovery or the time when the fraud should have been discovered through the exercise of due diligence." *Spears v. Moore*, 145 N.C. App. 706, 708, 551 S.E.2d 483, 485 (2001). "Whether a plaintiff has exercised due diligence is ordinarily an issue of fact for a jury . . . [but] failure to exercise due diligence may be determined as a matter of law . . . where it is 'clear that there was both capacity and opportunity to discover the mistake.'" *Id.* at 708–09 (quoting *Huss v. Huss*, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976)). "Where a confidential relationship exists between the parties, failure to discover the facts constituting the fraud may be excused." *Kaylor v. Fox*, No. COA01-1272, 2008 N.C. App. LEXIS 1154, at *5 (2008) (citing *Small v. Dorsett*, 223 N.C. 754, 761, 28 S.E.2d 514, 518 (1944)). "[I]t is generally held that when it appears that by reason of the confidence reposed the confiding party is actually deterred from sooner suspecting or discovering the fraud, he 'is under no

duty to make inquiry until something occurs to excite his suspicions.'" *Id.* (citing *Vail v. Vail*, 233 N.C. 109, 116–17, 63 S.E.2d 202, 208 (1951) (quotations omitted)).

{66} Plaintiffs allege that they could not have discovered and did not discover the fraud and misrepresentations of the Defendants until well after March 1, 2007. (2nd Am. Compl. ¶¶ 105, 106, 107, 147, 149.) Defendants present an argument that has some force that Plaintiffs' position is belied by the fact that that many of the Defendants' alleged misrepresentations concern matters disclosed in the Settlement Statement or in documents which were publicly available at the Brunswick County Register of Deeds. The arguments gain more strength because the Individual Plaintiffs are licensed attorneys who apparently paid very little attention or concern to the details of the transaction. But, ultimately, there is disputed evidence of what the Plaintiffs discovered or should have discovered. These issues may ultimately have to be revisited upon summary judgment but they cannot be resolved at this stage of the proceedings. If it ultimately proves that Plaintiffs should reasonably have been on notice well before March 1, 2007 that they had a claim for misrepresentation, dismissal of the claims on limitation grounds may be warranted even though Plaintiffs did not discover the full extent of the misrepresentations until a later point in time.[15] Plaintiffs' claims for negligent misrepresentation, fraud, and constructive fraud survive the present motions against Defendants who are not being dismissed on other grounds. Likewise, Plaintiffs' claims against those Defendants for civil conspiracy and unjust enrichment survive.

---

[15] Defendants emphasize that, at a minimum, Plaintiffs should have been on notice that something was awry when the developers did not repurchase the lot one (1) year after closing as promised. Plaintiffs respond that this event is not unusual considering the change in the economic climate. Even so, if this were the first notice of wrong, the action was started within three (3) years thereafter.

d.  The Legal Malpractice Claim against Gary Lawrence Which Includes the
Breach of Fiduciary Duty Claim Is Time-Barred While the Fraud Claim
Against Him Survives

{67}  Gary Lawrence moves to dismiss claims against him based on the four
(4) year statute of repose and the three (3) year statute of limitations set forth in
G.S. § 1-15(c).

{68}  Pursuant to G.S. § 1-15(c),

a cause of action for malpractice arising out of the performance of or
failure to perform professional services shall be deemed to accrue at
the time of the occurrence of the last act of the defendant giving rise to
the cause of action: Provided that whenever there is . . . economic or
monetary loss . . . not readily apparent to the claimant at the time of
its origin, and the . . . loss . . . or damage is discovered or should
reasonably be discovered by the claimant two or more years after the
occurrence of the last act of the defendant giving rise to the cause of
action, suit must be commenced within one year from the date
discovery is made: Provided . . . that in no event shall an action be
commenced more than four years from the last act of the defendant
giving rise to the cause of action . . .

N.C. GEN. STAT. § 1-15(c) (2011).

{69}  North Carolina courts have construed G.S. § 1-15(c) to provide that the
statute of limitations begins to run when the services sought by the plaintiff have
been completed or are no longer necessary.  *See McGahren v. Sanger*, 118 N.C. App.
649, 456 S.E.2d 852, *disc. rev. denied*, 340 N.C. 568, 460 S.E.2d 318 (1995) (holding
that the statute of limitations for legal malpractice claim arising out defective deed
accrued upon the attorney's delivery of the deed to the plaintiff, despite plaintiff's
failure to discover the defect until some time later).

{70}  The Second Amended Complaint indicates that the services sought by
Plaintiffs were complete at least by March 30, 2007, the end of the month of closing
and the date on which Gary Lawrence sent the general warranty deed.  (2nd Am.
Compl. ¶ 117.)  To take advantage of the longer four (4) year statute of repose,
Plaintiffs must allege: (1) the existence of economic or monetary loss not readily
apparent at the time of its origin; (2) that such damage was discovered or should

have reasonably been discovered two (2) or more years after March 30, 2007; and (3) that suit was commenced within one (1) year from the date of discovery. N.C. GEN. STAT. § 1-15(c) (2011).

{71} Plaintiffs do not specifically allege the date on which the alleged malpractice was discovered, or whether suit was filed within one (1) year of that discovery. Plaintiffs aver that they were unable to discover the alleged conflicts of interest, ethical bars, misrepresentations, negligence, and other wrongful acts of Gary Lawrence until sometime after the lot transaction closed. (2nd Am. Compl. ¶¶ 105, 106, 107, 147, 149.)

{72} However, Plaintiffs' allegations demonstrate that at least one basis on which they contend malpractice occurred was apparent no later than March 30, 2007. Specifically, Plaintiffs aver that Gary Lawrence committed malpractice because "[a]t no time did anyone associated with defendants . . . ever advise plaintiffs that defendant [Gary] Lawrence was occupying the unlawful and unethical position of plaintiffs' closing attorney while also acting as the escrow agent for the parties to the land transaction." (2nd Am. Compl. ¶ 88.) The Purchase Agreement signed by Kenneth King on December 6, 2006 unambiguously states that "[a]ll earnest money paid by [Plaintiffs] hereunder shall be held in an escrow account controlled by Gary Lawrence, as escrow agent." (2nd Am. Compl. Ex. B.) Plaintiffs further allege that the malpractice included Gary Lawrence's failure to attend the parking lot closing. Obviously, Kenneth King knew that Lawrence did not attend the closing, although they also allege that they did not know he was the closing attorney until receiving his March 30, 2007 correspondence enclosing the deed. Plaintiffs allege that "[a]t no time did defendant[ ] Gary Lawrence . . . ever reveal . . . that Pam Lawrence was closely connected to the Lennon Hills subdivision and would be receiving a commission in connection with plaintiffs' lot purchases" and that "Gary Lawrence never disclosed to plaintiffs that he was disbursing $42,500.00 of the purchase price to defendant Viable." (2nd Am. Compl. ¶¶ 111, 114.) The Settlement Agreement, signed by Kenneth King as of March 1, 2007, and also signed by Gary Lawrence, clearly discloses a $42,500.00

commission payment to both "Lawrence Sales and Marketing" and "Viable Corp." (2nd Am. Compl. Ex. C.)

{73} While Plaintiffs may not have known every fact which they have now discovered and which they claim constitutes malpractice within two (2) years of March 30, 2007, Plaintiffs' own allegations in the Second Amended Complaint demonstrate that certain facts on which they base their claim were readily apparent "at the time of the occurrence of the last act of [Gary Lawrence] giving rise to the cause of action[.]" N.C. GEN. STAT. § 1-15(c) (2011).

{74} Because "[b]reach of fiduciary duty is a species of negligence or professional malpractice[,]" Plaintiffs' breach of fiduciary claim against Gary Lawrence is included in the malpractice claim and is also barred by the three (3) year statute of limitations. *See Heath v. Craighill, Randleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 244, 388 S.E.2d 178, 183 (1990) (citing *Childers v. Hayes*, 77 N.C. App. 792, 795, 336 S.E.2d 146, 148 (1985)). The Second Amended Complaint and the documents it incorporates demonstrate that Plaintiffs are not entitled to the four (4) year statute of repose in G.S. § 1-15(c). Plaintiffs' claim for legal malpractice against Gary Lawrence, and the fiduciary duty claim it encompasses are then DISMISSED.

{75} Although the fiduciary duty claim against Gary Lawrence may be merged into the action for professional malpractice, the action grounded on fraud is not. "Fraud by an attorney . . . is not within the scope of 'professional services' . . . [and] cannot be 'malpractice' within the meaning of [G.S. § 1-15(c)]." *Sharp v. Teague*, 113 N.C. App. 589, 592, 439 S.E.2d 792, 794, *review improvidently granted*, 339 N.C. 730, 456 S.E.2d 771 (1995). As discussed below, the fraud claims survive the motions to dismiss.

4.  It is Premature to Decide Whether the Action Should Be Dismissed Because of BDM's Failure to Allege the Filing of a Certificate of Assumed Name in Brunswick County

{76} Defendants move to dismiss all claims in the Second Amended Complaint because Plaintiffs did not plead that the partnership filed a Certificate of Assumed Name ("Certificate") in Brunswick County pursuant to G.S. § 1-69.1 and G.S. § 66-68.  Plaintiffs contend alternatively that BDM is not subject to this statute or, if the statute applies, Plaintiffs substantially complied with the statute's purposes.   The Court finds that there are factual issues which preclude a determination at this time whether Plaintiffs are subject to or have satisfied the statutory requirements.

{77} As an initial matter, the Court notes that the defense raised does not attack the real estate transaction itself or the fact that title was transferred to the Partnership.  The defense relates only to whether BDM has the right to access the courts to assert claims based on the real estate it purchased.

{78} Plaintiffs first assert that the statute does not apply to BDM because it "does not engage in any business of any sort other than to hold real estate."  (2nd Am. Compl. ¶ 3.)

{79} "An unincorporated association may sue in its own name, without naming any of the individual members composing it, but only if the association alleged in its compliant the 'specific location of the recordation required by G.S. 66-68.'" *Cherokee Home Demonstration Club v. Oxendine*, 100 N.C. App. 622, 625, 396 S.E.2d 643, 645 (1990) (quoting N.C. GEN. STAT. § 1-69.1 (2011)).  *Oxendine* recognized that title had passed and had vested in the association, but held that the association could not bring suit based on its title.

{80} G.S. § 66-68 provides in pertinent part:

(a) . . . before any person or partnership engages in business in any county in this State under an assumed name or under any designation, name or style other than the real name of the owner or owners thereof, . . . such . . . partnership . . . must file in the office of the register of deeds of such county a certificate giving the following information:

(1)  The name under which the business is to be conducted; and

(2)  The name and address of the owner, or if there is more than one owner, the name and address of each.

(b)  If the owner is a . . . partnership, the certificate must be signed and duly acknowledged by . . . each general partner.

(c)  Whenever a general partner withdraws from or a new general partner joins a partnership, a new certificate shall be filed.

N.C. GEN. STAT. § 66-68 (2011).

{81}  Unlike statutes dealing with foreign corporations doing business in North Carolina, G.S. 66-68 does not include its own definition of "doing business."[16]

{82}  In an effort to comply with the mandates of G.S. § 1-69.1 and 66-68, Plaintiffs allege:

> [BDM] did in fact prepare and file in the County of Onslow, State of North Carolina, the Certificate attached hereto as Exhibit A.  Plaintiff BDM filed the subject Certificate on January 1, 1993, and said Certificate was recorded with the Register of Deeds' Office in Onslow County, North Carolina on Book 1104, Page 694, at 9:26 a.m. on the 15th day of April ,, (sic) 1993.

(2nd Am. Compl. ¶ 3.)

{83}  The statutory language is such that if BDM was "doing business" in Brunswick County, the Certificate filed in Onslow County would not be sufficient to satisfy the statutory requirements because: (1) the Certificate attached as Exhibit A was filed in Onslow County instead of Brunswick County where the property is located; (2) Leah L. King is not a signatory to the Certificate; and (3) a new certificate was not filed when Clay A. Brumhaugh and Cheryl J. Leone withdrew as general partners or when Leah L. King was admitted.

---

[16]  *Cf.* G.S. 55-15, which requires a foreign corporation to obtain a certificate of authority in order to maintain litigation in the North Carolina courts if it is doing business in the State.  That statute defines "doing business," and includes a specific provision that the passive holding of title to real estate does not alone constitute doing business requiring that a certificate of authority be obtained. *See* N.C. GEN. STAT. §§ 55-15-01, 55-15-02 (2011).

{84} Plaintiffs contend that passively holding title to real property is not "doing business" within the meaning of the statute. If it is ultimately determined that the activities associated with negotiating and closing the real estate investment constitutes "doing business," it is not clear at this time whether those activities occurred in Brunswick County or in Onslow County where a Certificate had been filed.

{85} As to Plaintiffs' argument that they complied with the statute's purposes, the statute is designed to assure that persons doing business with the unincorporated association are aware of with whom they are dealing. *See Price v. Edwards*, 178 N.C. 493, 101 S.E. 33 (1919). At least Hollingsworth appears to have been well acquainted with the Partnership and may likely have been specifically aware of who were its individual members. At the same time, a technical failure to comply with the statute can lead to dismissal. *See Oxendine*, 100 N.C. App. 622, 397 S.E.2d 643.

{86} The Court concludes that there are factual issues that have not been sufficiently established to develop the record on which issues under G.S. § 1-69.1 and 66-68 should be resolved. Accordingly, Defendants' motions to dismiss on this ground are DENIED.


## 5. While Individual Claims Survive Against Only Hollingsworth and Gary Lawrence, Plaintiffs Have Adequately Stated Claims for Conspiracy and Joint Venture to Which Other Defendants Are Tied

### a. Plaintiff Has Stated a Claim for Breach of Fiduciary Duty Against Hollingsworth

{87} The fiduciary duty claim against Defendant Hollingsworth is particularly significant to the theories of joint and several liability. Plaintiffs seek to impose liability on other members of the alleged conspiracy with whom they did not deal and upon whom they did not directly rely by tying the conspirators to the breach of duties by Hollingsworth with whom they did deal directly. Plaintiffs contend that claims against all conspirators survive because the wrongs give rise to

a constructive trust based on Hollingsworth's breach of fiduciary duties, and that the claims are therefore governed by a ten (10) year statute of limitations. *See Babb v. Graham*, 190 N.C. App. 463, 480, 660 S.E.2d 626, 637 (2008), disc. review denied, 363 N.C. 257, 676 S.E.2d 900 (2009) (indicating that claims for breach of fiduciary duty that rise to the level of constructive fraud are subject to a ten (10) year statute of limitations).

{88} Defendants claim that Plaintiffs have not stated an actionable claim for breach of fiduciary duty, asserting that (1) any *de jure* fiduciary relationship of accountant and client terminated in 2004 when Hollingsworth sold his accounting practice; and (2) Plaintiffs have failed to sufficiently plead the existence of the level of domination and control necessary to support a *de facto* fiduciary relationship.

{89} The existence of the fiduciary duty depends in the first instance on there being a fiduciary relationship between the parties. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). North Carolina recognizes certain *de jure* fiduciary relationships which arise as a matter of law because of the nature of the relationship, "such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and cestui que trust." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). *De facto* fiduciary relationship with accompanying duties may additionally arise when:

> there has been special confidence reposed in one side who in equity and good conscious is bound to act in good faith and with due regard to the interest of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'

*Dalton*, 353 N.C. at 650–51, 548 S.E.2d at 707–08. Such relationships require an intense factual inquiry and the standard is demanding. "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a

fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347–48 (4th Cir. 1998).

{90} Plaintiffs first contend that a *de jure* fiduciary relationship with Hollingsworth continued based on Hollingsworth's position as Plaintiffs' former accountant. The Court concludes the *de jure* relationship ended when Hollingsworth retired from the accounting profession and that Plaintiffs' claim survives only if they adequately plead a *de facto* fiduciary relationship.

{91} Plaintiffs assert that after selling his accounting business, "Hollingsworth told Mr. King that Hollingsworth would still be serving his clients financial interests by including select clients in favorable investment opportunities" (2nd Am. Compl ¶ 71); "King, in reliance on the . . . fiduciary relationship that had existed with defendant Hollingsworth for many years, believed that defendant Hollingsworth would be acting in plaintiff King's best interest in all respects related to matters of personal and business financial nature, including investments" (2nd Am. Compl ¶ 71.); "all of the defendants created a relationship of trust and confidence with plaintiffs relative to plaintiffs' decision to purchase 10 lots in the Lennon Hills subdivision" (2nd Am. Compl. ¶ 126); and Hollingsworth instructed Kenneth King that he would handle everything related to the lot purchases including "personally select[ing] the specific ten (10) lots for sale to BDM" and "tak[ing] all necessary actions to complete BDM's investment in terms of paperwork and arranging the necessary financing." (2nd Am. Compl. ¶¶ 80–81.) Though the words "domination and influence" are not specifically used, the allegations repeatedly assert that Hollingsworth withheld or limited the flow of information to the Plaintiffs throughout the entire transaction. (*See, e.g.*, 2nd Am. Compl. ¶¶ 88–91, 99, 105, 106, 108.)

{92} Defendants again assert that the Plaintiffs are licensed attorneys who did little to protect their own interests and did not reasonably cede the control or dominion to Hollingsworth necessary to support a fiduciary relationship. Again, however, the Court concludes that those arguments must await summary judgment or trial. The allegations when accepted as true are adequate to state a claim

against Hollingsworth for breach of fiduciary duty. Hollingsworth's motion should then be DENIED unless the claim is time-barred. That depends upon whether Plaintiffs have also stated an actionable claim for a constructive trust, thus entitling Plaintiffs to a ten (10) year limitations period.

b. Plaintiffs Have Stated An Actionable Claim For Constructive Trust Against Hollingsworth

{93} To recover on a claim to impose a constructive trust, there must be "facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 647, 679 (1981). There is some authority stating that a plaintiff must also allege that the defendant sought to benefit himself by his misconduct, *Burger v. McCoy Hilliard & Parks*, 346 N.C. 650, 667, 488 S.E.2d 215, 224–25 (1997), and that the plaintiff was injured by that misconduct. *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). However, there is also an argument that once the fiduciary relationship has been demonstrated, the burden is on the defendant to prove fair and open dealing, such that a defendant's failure to benefit personally from an asserted breach of duty is more in the nature of an affirmative defense. *Orr v. Calvert*, No. 242A11, 2011 N.C. LEXIS 989, at *1 (2011) (adopting dissenting opinion in *Orr v. Calvert*, No. COA10-480, 2011 N.C. App. LEXIS 1163 (2011)). Even so, Plaintiffs have alleged Hollingsworth personally benefitted to Plaintiffs' detriment.

{94} The Court concludes that Plaintiffs have adequately stated a claim for constructive fraud against Hollingsworth that survives a motion to dismiss.

{95} The limitations period for claims based on a constructive trust is ten (10) years. *See Babb*, 190 N.C. App. at 480, 660 S.E.2d at 637.

{96} Accordingly, the claim for constructive trust against Hollingsworth survives and his motion to dismiss that claim should be DENIED.

### c. Plaintiffs' Individual Fraud Based Claims Should Be Dismissed Except As to Hollingsworth and Gary Lawrence

### 1. Plaintiffs Must Satisfy the Rule 9(b) Pleading Requirement

{97} Defendants contend that (1) Plaintiffs' fraud, fraud in the inducement, and negligent misrepresentation claims should be dismissed for failure to comply with the Rule 9(b) specificity requirement; and (2) that Plaintiffs' fraud, fraud in the inducement, negligent misrepresentation, unfair and deceptive trade practices, and equitable estoppel claims should be dismissed for lack of reasonable reliance.

{98} To state an actionable claim for fraud, the complaint must allege with particularity "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentations or concealment." *Clagget v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997).

{99} To state an actionable claim for fraudulent inducement, the compliant must allege with specificity:

> (i) that the defendant made a false representation or concealed a material fact he had a duty to disclose; (ii) that the false representation related to a past or existing fact; (iii) that defendant made the representation knowing it was false or made it recklessly without knowledge of its truth; (iv) that defendant made the representation intending to deceive the plaintiff; (v) that plaintiff reasonably relied on the representation and acted upon it; and (vi) plaintiff suffered some injury.

*Harton v. Harton*, 81 N.C. App. 295, 298–99, 344 S.E.2d 117, 119–20 (1986).

{100} "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bakaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (internal citations omitted).

{101} A fraud claim is "subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv.*, Inc., 91 N.C. App. 539, 542, 372 S.E.2d 901, 903 (1988) (citation omitted). Pleadings meet the requirements of Rule 9(b) when they allege the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Bob Timberlake Collection, Inc., v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (quoting *Terry*, 302 N.C. App. at 85, 273 S.E.2d at 678 (1981)) (quotations omitted). In *Perkins v. Health Markets, Inc.*, this Court stated that "allegations of fraud may be made upon information and belief only when the matters are particularly within the Defendants' knowledge, and facts are stated upon which belief is founded." *Perkins v. Health Markets, Inc.*, 2007 NCBC 25, ¶ 60 (N.C. Super. Ct. July 30, 2007), http://www.ncbusinesscourt. net/opinions/2007%20NCBC%2025.pdf (citing *Breeden v. Richmond Comm. College*, 171 F.R.D. 189, 197 (M.D.N.C. 1997)).

{102} The vast majority of those allegations upon which the fraud claims are based relate to misrepresentations allegedly made by Hollingsworth and omissions of Gary Lawrence.

{103} The Court concludes that the Second Amended Complaint adequately alleges the "time, place and content of the fraudulent representation" made by Hollingsworth and Gary Lawrence and identifies "what was obtained as a result of the fraudulent acts or representations." (2nd Am. Compl. ¶¶ 73, 75, 76, 80, 82, 88, 89, 91, 93, 94, 95, 96, 97, 98, 101, 105, 107, 108, 111, 112, 113, 114, 115, 116, 117.)

{104} In contrast to claims against Hollingsworth and Lawrence, the Court concludes that the Second Amended Complaint does not allege the "time, place and

content of the fraudulent representations" or omissions attributable to the other Defendants. Accordingly, the fraud claims against the Defendants other than Hollingsworth and Gary Lawrence are DISMISSED to the extent that they assert individually actionable fraud claims against them.

### 2. Plaintiffs Lack of Reasonable Reliance Does Not Bar the Fraud Claims Against Hollingsworth and Gary Lawrence or the Unfair and Deceptive Trade Practices Claim Against Hollingsworth

{105} To the extent that claims against Hollingsworth and Lawrence arise from fiduciary relationships, Plaintiffs may be excused from showing reasonable reliance. *Kaylor,* 2008 N.C. App. LEXIS 1154, at *5 (2008) (citing *Small v. Dorsett*, 223 N.C. 754, 761, 28 S.E.2d 514, 518 (1944)); *see Vail*, 233 N.C. at 116–17, 63 S.E.2d at 208; *see also Jennings*, 69 N.C. App. at 716–17, 318 S.E.2d at 321. The Court has dismissed individual fraud claims against other Defendants. The issue of reasonable reliance must also be considered for claims for unfair and deceptive trade practices and equitable estoppel.[17]

{106} To state a claim for unfair and deceptive trade practices under Chapter 75, a plaintiff must allege: (1) an unfair and deceptive act or practice; (2) in or affecting commerce; and (3) which proximately causes actual injury. *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 844 (2000); *see also Strickland v. Lawrence*, 176 N.C. App. 656, 665, 627 S.E.2d 301, 307 (2006). "Where an unfair or deceptive trade practice claim is based upon the alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." *Sunset Beach Dev., LLC v. Amec, Inc.*, 196 N.C. App 202, 211, 675 S.E.2d 46, 53 (2009) (citing *Tucker v. Blvd. at Piper Glen LLC*, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002); *see Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 702, 671 S.E.2d 7, 13 (2009); *see also Forbes v. Par Ten*

---

[17] Plaintiffs do not allege claims for unfair and deceptive trade practices and equitable estoppel against Gary Lawrence.

*Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990), *cert. denied*, 99 N.C. 587, 402 S.E.2d 824 (1991) (indicating that to prevail under Chapter 75, a plaintiff must show that he detrimentally relied upon a statement or misrepresentation and he suffered actual injury as a proximate result).

{107} The essential elements of equitable estoppel are "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 305, 603 S.E.2d 147, 162 (2004) (citations omitted). To assert the defense, a plaintiff must have "(1) a lack of knowledge and a means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped." *Id.*

{108} As previously discussed, Plaintiffs have not alleged that they relied on any representations by Defendants other than Hollingsworth and Gary Lawrence. Independent individual claims for unfair and deceptive trade practices and equitable estoppel against Defendants other than Hollingsworth and Gary Lawrence are DISMISSED.

{109} With respect to land transactions, the Court of Appeals has stated that:

> "reliance is not reasonable if a plaintiff fails to make any independent investigation" unless the plaintiff can demonstrate: (1) "it was denied the opportunity to investigate the property," (2) it "could not discover the truth about the properties condition by exercise of reasonable diligence," or (3) "it was induced to forego additional investigation by the defendant's misrepresentations."

*Sunset Beach*, 196 N.C. App at 209, 675 S.E.2d at 52 (citation omitted).

{110} Plaintiffs' own allegations make clear that neither Kenneth King nor other Plaintiffs ever requested to participate in the financing, the conduct of the appraisal, or any other aspect of the lot purchase transaction. (2nd Am. Compl. ¶¶ 89, 91.) Nevertheless, Plaintiffs allege that they could not, "in the excise of due diligence, have discovered the existence of the numerous fraudulent misrepresentations and conflicts of interest and improper relationships. Plaintiffs

were induced to forego any investigation or inquiry by the nature of the false and misleading misrepresentations and concealment of material facts undertaken by the defendants." (2nd Am. Compl. ¶ 149.) Essentially, they assert that they were entitled to and did rely exclusively on Hollingsworth as a fiduciary and on Gary Lawrence as a closing attorney, such that they bear no responsibility for their failures to discover what could have been discovered through reasonable independent investigation. That is significant because many of the facts upon which Plaintiffs now rely were matters of public record existing at the time of the lot purchase.

{111} Again, while the Court recognizes the strengths of arguments directed at the Plaintiffs who are licensed attorneys, at this stage, the Court must accept Plaintiffs' allegations as true. As such, Defendants' motions with respect to the fraud, fraud in the inducement, negligent misrepresentation, and equitable estoppel claims against Hollingsworth and Gary Lawrence based on lack of reliance are DENIED.

{112} Defendants' motion with respect to the unfair and deceptive trade practice claim against Hollingsworth based on lack of reliance is DENIED.

### 3. Plaintiffs Have No Actionable Claim for Unjust Enrichment Except As Against Hollingsworth

{113} Plaintiffs claim that Hollingsworth, Viable, and Pam Lawrence received undisclosed commissions to which they were not legally entitled, leading to an actionable claim of unjust enrichment. The Court has dismissed claims against Viable and Pam Lawrence on statute of limitations grounds.

{114} A claim for unjust enrichment is an equitable claim based on a theory of quasi or implied contracts. *Atlantic and East Carolina Ry. Co.*, 163 N.C. App. at 753, 594 S.E.2d at 429. "[I]f there is a contract between the parties [,] the contract governs the claim[,] and the law will not imply a contract. *Booe*, 322 N.C. at, 571, 369 S.E.2d at 554; *see Delta Envtl. Consultants, Inc*, 132 N.C. App. at 165, 501

S.E.2d at 694 (indicating that "[i]t is well established that if there is a contract between the parties, the contract governs the claim and the law will not imply a contract . . . [In such cases] an action for breach of contract, rather than unjust enrichment, is the proper cause of action").

{115} To establish a claim for unjust enrichment, Plaintiffs must allege: (1) a measurable benefit was conferred on the defendant; (2) the defendant consciously accepted the benefit; and (3) the benefit was not conferred gratuitously. *Progressive American Ins. Co. v. State Farm Mutual*, 184 N.C. App. 688, 695–96, 647 S.E.2d 111, 116 (2007). A key element is that a benefit inure to the defendant. "Without enrichment, there can be no 'unjust enrichment' and therefore no recovery on an implied contract." *Greeson v. Byrd*, 54 N.C. App. 681, 683, 284 S.E.2d 195, 196 (1995).

{116} The Second Amended Complaint alleges that Hollingsworth used his fiduciary relationship with the Plaintiffs to gain an undisclosed commission of $42,500.00 on the sale of the Lennon Hills lots. (2nd Am. Compl. ¶¶ 108, 170.) Accepted as true, and viewed in tandem with the allegations of other misconduct by Hollingsworth, Plaintiffs have stated a claim against Hollingsworth for unjust enrichment. Defendants' motion with respect to the unjust enrichment claim against Hollingsworth is DENIED.

{117} Plaintiffs' unjust enrichment claim against Gary Lawrence is predicated upon the commission paid to Pam Lawrence through Lawrence S&M and his provision of legal services to BDM. Those claims are being dismissed. Therefore, Plaintiffs' unjust enrichment claim against Gary Lawrence is DISMISSED.

d.  The Plaintiffs Have Stated A Claim For Civil Conspiracy That Survives the Motion to Dismiss, And Have Adequately Tied Some But Not All Defendants To The Alleged Conspiracy

{118}  All independent individual claims are being dismissed except those that have survived against Hollingsworth and Gary Lawrence.  The issue then becomes whether Plaintiffs have adequately pled a conspiracy on behalf of which Hollingsworth and Gary Lawrence may be concluded to have acted to further its purposes.  If so, the Court must then determine whether Plaintiffs have made adequate allegations tying the individual Defendants to that conspiracy.

{119}  A conspiracy has been defined as :

> "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way."  The common law action for civil conspiracy is for damages caused by acts committed pursuant to a conspiracy rather than for the conspiracy, *i.e.*, the agreement, itself.  Thus, to create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to a common agreement and in furtherance of a common objective.  Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.

*Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981) (emphasis in original).  "When a cause of action lies for injury resulting from a conspiracy, 'all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement.'"  *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 53, 560 S.E.2d 829, 838 (2002) (citations omitted).

{120}  Plaintiffs again rest on very broad allegations.  Plaintiffs contend that during some time not specifically alleged, the "defendants conspired and/or entered into an agreement to improperly entice plaintiffs into purchasing and financing 10 lots in the Lennon Hills subdivision" by "their actions, misrepresentations and concealment of material facts and conflicts of interest and improper relationships . . ."  (2nd Am. Compl. ¶ 170.)

{121} Plaintiffs contend that in furtherance of the alleged conspiracy, Hollingsworth, Lenhil, Lennon Hills, Burnett, Hilla, Viable, Gary Lawrence, Lawrence S&M, Pam Lawrence, Keith Meyers, and Meyers Appraisal Services, LLC agreed that Hollingsworth would (1) entice former clients to purchase lots in the Lennon Hills development; (2) convince established national lenders to extend financing based on unfavorable and detrimental terms; (3) locate an appraiser willing to place an arbitrary valuation on the lots; (4) orchestrate the improper sale of "comparables" to establish a market value for the lots; (5) misrepresent his own financial interest in Lennon Hills; and (6) "refrain from providing plaintiffs with a truth and lending statement, a good faith estimate of loan and closing costs, an appraisal of the lots, or other documentation that might have made plaintiffs less likely to purchase the Lennon Hills lots" all in return for an undisclosed commission. (2nd Am. Compl. ¶ 170(a)–(x).)

{122} Though many of the allegations are broad and conclusory, read liberally the Second Amended Complaint alleges that Hollingsworth, Gary Lawrence, Lennon, and the Lennon Hills Defendants had a pre-existing relationship involving various real estate developments and entered into an elaborate agreement pursuant to which Hollingsworth and Gary Lawrence misrepresented or concealed numerous material facts relevant to BDM's purchase of the Lennon Hills lots because of the need to generate funds.

{123} As noted in the Introduction to this Order, the Court is concerned about a Court allowing any disappointed plaintiff in this or any other case involving a failed real estate development to join every player in the overall transaction based on broad allegations with scant factual support that each player is liable for some wrong in the transaction, and then await the narrowing of the case to only those against whom liability may reasonably be expected to be proven based on discovered facts. At the same time, the Court must fairly apply the liberal standards that govern motions to dismiss. Here, even though the Court might have some skepticism whether BDM will ultimately be able to sustain its burden of proof, the Court concludes that Plaintiffs have adequately alleged a conspiracy, and that

Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hilla, and Viable were members of that conspiracy. *See Nugent v. Beroth Oil Co.*, 149 N.C. App. 38, 560 S.E.2d 829 (2002); *see also GoRhinoGo*, 2011 NCBC 38, ¶ 35. However, the Court further concludes that Plaintiffs have not adequately alleged facts that justify the conspiracy claim moving forward as to other Defendants.

{124} Defendants' motions with respect to the civil conspiracy claims against Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hilla, and Viable are DENIED. The conspiracy claims against Plaintiffs have failed to tie Pam Lawrence, Lawrence S&M, Evans, and Homeplace to the conspiracy and the conspiracy claims against them are DISMISSED.

e. Plaintiffs' Claims For Liability By Reason of Joint Enterprise, Joint Venture, or Joint Adventure Survive to the Same Extent As the Conspiracy Claim

{125} Like conspiracy, claims of joint enterprise, joint venture, and joint adventure do not constitute independent causes of action in North Carolina; these claims form the basis of an agency relationship whereby one party's conduct may be imputed to another. *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 10–11, 161 S.E.2d 453, 461 (1968).

{126} A joint enterprise is an alliance between two (2) or more people in pursuit of a common purpose. *Slaughter v. Slaughter*, 93 N.C. App. 717, 720, 379 S.E.2d 98, 100 (1989). "Parties may be said to be engaged in a joint enterprise when there is a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movement of each with respect thereto." *Id.*

{127} "A joint venture exists when there is: (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) *an equal right of control* of the means employed to carry out the venture." *Rifenburg Constr., Inc. v. Brier Creek Assocs., LP*, 160 N.C. App. 626, 632, 586 S.E.2d 812, 817 (2003) (emphasis in original). According to our Supreme Court:

> Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties in which each has a right in some measure to direct the conduct of the other through a necessary fiduciary relation, will justify a finding that a joint venture exists.
>
> To constitute a joint adventure, the parties must combine their property, money, efforts, skill, or knowledge in some common undertaking. The contributions of the parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise.

*Cheape v. Town of Chapel Hill*, 320 N.C. 549, 561, 359 S.E.2d 792, 799 (1987) (citation omitted).

{128} To establish these claims, Plaintiffs allege:

> The defendants entered into an express or implied agreement to carry out a single and joint business enterprise and/or venture in which the defendants would earn a profit at the expense of the plaintiffs, all as set forth in the preceding paragraphs and causes of action. The defendants engaged in this joint enterprise and/or venture for a common purpose – to sell the lots to the plaintiffs and earn a profit therefrom. Each defendant had an equal right to control the means of carrying out the joint enterprise and/or venture, and each defendant combined his effort, property, resources to carry the joint enterprise and/or venture forward.

(2nd Am. Compl. ¶ 199.)

{129} Although the current broad allegations of control and joint profit rest on a slim factual reed, accepted as true, the allegations of the Second Amended Complaint sufficiently state causes of action against Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hills, and Viable for joint enterprise, joint venture, and joint adventure. Defendants' motions with respect to those claims should be DENIED. These claims against Pam Lawrence, Lawrence S&M, Evans, and Homeplace are DISMISSED.

### f. The Court Defers Ruling on the Merits of the Aiding and Abetting a Breach of Fiduciary Duty Claim

{130} It is uncertain whether North Carolina now recognizes a claim for aiding and abetting a breach of fiduciary duty. While not resolving the question whether any such claim will be recognized, this Court recognized that if a claim for aiding and abetting does lie, the primary party and the aiding and abetting party must have the same level of culpability or scienter for the breach. *Sompo Japan Insurance Inc. v. Deloitte & Touche*, 2005 WL 1412741, *4 (N.C. Super. Ct. June 10, 2005) (indicating "[w]hat is clear from all the cases and the Restatement is that there is not a lower level or culpability or scienter for aiding and abetting than for the underlying tort").

{131} Having allowed the conspiracy and joint venture claims to move forward, the Court elects to defer any dispositive ruling on the claim for aiding and abetting. However, the aiding and abetting claim survives only as to those Defendants against whom the conspiracy and joint venture claims survive. No such claim lies against Hollingsworth because an aiding and abetting a breach of fiduciary duty claim "applies only to third parties who do not stand in a fiduciary relationship with the alleged victim, but who provide substantial assistance towards accomplishing the alleged breach." *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33 ¶ 70 (N.C. Super. Ct. Oct. 19, 2007), http://www. ncbusinesscourt.net/opinions/101907%20Order%20Webpage.pdf. Plaintiffs' aiding and abetting a breach of fiduciary duty claim against Hollingsworth is DISMISSED.

### g. Plaintiffs Have No Actionable Claim for Violation of the North Carolina Residential Mortgage Fraud Act

{132} Plaintiffs cannot maintain a claim for violation of the North Carolina Residential Mortgage Fraud Act ("Act") because the Act did not exist when the lot transaction occurred.

{133} The legislative history for the Act indicates that it was introduced to the legislature on March 14, 2007, signed into law on July 4, 2007, and made applicable only to offenses committed after December 1, 2007. 2007 Bill Tracking NC H.B. 817; 2007 N.C. ALS 163, *2; 2007 N.C. Sess. Laws 163; 2007 N.C. Ch. 163.

{134} The lot transaction in this case closed on March 1, 2007, prior to the enactment of the Act. Accordingly, Plaintiffs' claim for violation of the Act is DISMISSED.

### h. The Court Defers Ruling on the Issue of Whether Punitive Damages May Be Imposed Against Conspirators Who Undertook Affirmative Acts In Furtherance of the Conspiracy

{135} Pursuant to G.S. § 1D-15(a), punitive damages may be awarded "only if the claimant proves that the defendant is liable for compensatory damages and that" an aggravating factor such as fraud, malice, or willful or wanton conduct "was present and related to the injury for which compensatory damages were awarded." N.C. GEN. STAT. § 1D-15(a) (2011).

{136} G.S. § 1D-15(c) provides:

> Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rises to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to the punitive damages.

N.C. GEN. STAT. § 1D-15(c) (2011).

{137} The Court is not presently aware of any North Carolina case which specifically addresses the issue of whether punitive damages may be imposed upon co-conspirators who did not themselves undertake the acts upon which the punitive damages claim rests. The theory would be that imposing punitive damages on them does not constitute vicarious liability but direct liability because participation in the

conspiracy necessarily means that the conspirator "participated in the conduct constituting the aggravating factor giving rise to the punitive damages." That inquiry presents mixed questions of law and fact. The Court defers deciding the issue of whether the claim for punitive damages may be sustained against one or more conspirators or joint venturers. However, the punitive damages claims, like other claims, should be DISMISSED as against Pam Lawrence, Lawrence S&M, Evans, and Homeplace.

## B. Plaintiffs' Motion To Dismiss

{138} On July 1, 2011, the Lennon Hills Defendants filed a counterclaim for defamation arising out of allegations in the Second Amended Complaint detailing Lennon Hills' purported involvement in the fraud suffered by Green. Plaintiffs' Motion seeks to dismiss the counterclaim pursuant to Rule 12(b)(6) because the defamation claim is barred by the absolute privilege attendant to statements made in the course of judicial proceedings.

{139} As a general rule, statements made by a party or an attorney during the course of a judicial proceeding, including allegations set forth in a pleading, are privileged and cannot form the basis of a defamation claim. *Scott v. Statesville Plywood & Veneer Co., Inc.*, 240 N.C. 73, 76, 81 S.E.2d 146, 148 (1954). In articulating the standard by which courts should address defamatory statements in pleadings, the North Carolina Supreme Court stated:

> [w]hile statements and pleadings and other papers filed in a judicial proceeding are not privileged if they are not relevant or pertinent to the subject matter of the action, the question of relevancy or pertinency is a question of law for the courts, and the matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety. If it is so related to the subject matter of the controversy that it may become the subject of inquiry in the course of the trial, the rule of absolute privilege is controlling.

*Scott*, 240 N.C. at 76, 81 S.E.2d at 149 (citations omitted). Thus, for the counterclaim to survive the Plaintiffs' Motion, the Lennon Hills Defendants must prove that the subject allegations are "palpably irrelevant to the subject matter" of the lawsuit.

{140} The Lennon Hills Defendants assert the legal conclusion that "[t]he defamatory statements published by the Plaintiffs in their Compliant have no relevance or pertinence to the subject matter of the Plaintiffs' Complaint." (Am. Answer, Affirmative Defenses, Mot. to Dismiss, Mot. to Strike, Countercl. of Defs. Lenhil, Inc., Lennon Hills, L.L.C., Viable Corp., Edwin L. Burnett, III, & Dan Hilla ("Countercl.") ¶ 4.)

{141} The Court cannot rule, however, as a matter of law, that the allegations related to the Lennon Hills Defendants are "so palpably irrelevant" to the subject matter of the lawsuit.

{142} The Lennon Hills Defendants' counterclaim for defamation is DISMISSED.

## C. Defendants' Motions to Strike

{143} Defendants move pursuant to Rule 12(f) to strike from the Second Amended Complaint (1) any allegations related to fraudulent conduct directed to Green and T&T Partnership; and (2) any claims or allegations against Keith Meyers, Meyers Appraisal Services, LLC, Nicholas R. Frank, and the Wachovia related Defendants. While the Parties referred to other matters, the Court decides this motion based solely on the allegations in the Second Amended Complaint. [18]

---

[18] Plaintiffs offered a timeline with supporting documentation from public records and the Parties submitted opposing briefs on whether it should be considered. The Court has chosen not to review either the timeline or its support. The Court believes the allegations of the Second Amended Complaint itself are adequate to illuminate well enough the respective arguments on the motion to strike.

### a. Standard of Review

{144}  Rule 12(f) states that upon motion of one of the parties, a "judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter."  Whether to grant a movant's request to strike such material is within the Court's discretion.  *See Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25, 588 S.E.2d 20, 25 (2003).  That being said, "matter should not be stricken [from a pleading] unless it has no possible bearing upon the litigation." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108 (1978).  If there is any question as to whether an issue may arise, the motion to strike should be denied. *Id.*

### b. The Allegations Related to Green and T&T Partnership Should Not Be Stricken Despite Questions Regarding Whether They Ultimately May Prove to Be Probative or Relevant

{145}  In substance, Plaintiffs contend that while serving as Green's attorney and trusted financial advisor, Lennon engaged in an elaborate scheme to defraud Green.  (2nd Am. Compl. ¶¶ 25–32.)  Thereafter, Lennon, Viable, and Burnett used $850,000.00 of the money defrauded from Green to acquire the Lennon Hills tract.  (2nd Am. Compl. ¶¶ 39–47.)  In 2007, Green allegedly discovered the scheme and began to make demands for monetary reimbursement.  (2nd Am. Compl. ¶¶ 59–60).

{146}  Plaintiffs do not assert claims on behalf of Green and T&T Partnership.  Rather, they aver that the allegations regarding them provide relevant background evidence.  Plaintiffs theorize that pressure from Green served as Defendants' underlying motivation to induce T&T Partnership's purchase of ten (10) lots in the Lennon Hills development and to organize and set in motion the conspiracy against BDM.

{147}  At this stage in the litigation, the Court cannot say, as a matter of law, that the allegations related to Green and T&T Partnership are altogether irrelevant

and immaterial to the Plaintiffs' claims. The Court again notes, however, that Plaintiffs' supposition is suspect considering that their purchase appears to have preceded Green's discovering claims he might have. Ultimately, this inconsistency may justify limitations on Plaintiffs' proof or arguments, but at this time, Defendants' motion to strike is DENIED.

### c. The Allegations Related to Meyers, Meyers Appraisal Services, LLC, and the Wachovia Related Defendants Should Not Be Stricken, But the Allegations Against Nicholas R. Frank Should Be

{148} The Second Amended Complaint contains numerous allegations detailing wrongful conduct undertaken by Meyers, Meyers Appraisal Services, LLC, Nicholas R. Frank ("Frank"), and the Wachovia related Defendants.

{149} Although each were initially named as Defendants in this action, Plaintiffs have (1) failed to properly serve Meyers and Meyers Appraisal Services, LLC; (2) voluntarily dismissed the Wachovia related Defendants; and (3) voluntarily dismissed Frank.

{150} The allegations related to Meyers, Meyers Appraisal Services, LLC, and the Wachovia related Defendants arguably may be relevant background for the fraud allegations. The Defendants are alleged to have impugned the appraisal process and Plaintiffs take exception to the process by which financing was obtained from the Wachovia related Defendants. The Court will not strike them at this time.

{151} There is, however, no discernable relevance to the allegations against Frank. Defendants' motions to strike allegations of the Second Amended Complaint related to Nicholas R. Frank are GRANTED. Their motions to strike are otherwise DENIED.

{152} The Court is prepared to restrict discovery on these marginal allegations if necessary.

## VI. CONCLUSION

{153} The Defendants' motions are GRANTED as follows:

1) All claims asserted by the Individual Plaintiffs, and those claims are hereby DISMISSED;

2) All claims against Pam Lawrence and Lawrence S&M, and those claims are hereby DISMISSED;

3) All claims against Evans and Homeplace Realty, and those claims are hereby DISMISSED;

4) As against all other Defendants, all claims for negligence, gross negligence, conversion, breach of contract, and breach of the implied covenant of good faith and fair dealing, and those claims are hereby DISMISSED;

5) The legal malpractice claim against Gary Lawrence, including the breach of fiduciary duty claim, and those claims are hereby DISMISSED;

6) The constructive fraud claims against Defendants other than Hollingsworth, and those claims are hereby DISMISSED;

7) The fraud, fraud in the inducement, and negligent misrepresentation claims against Defendants other than Hollingsworth and Gary Lawrence, and those claims are hereby DISMISSED;

8) The unfair and deceptive trade practice claims against Defendants other than Hollingsworth, and those claims are hereby DISMISSED;

9) The equitable estoppel and unjust enrichment claims against Defendants other than Hollingsworth, and those claims are hereby DISMISSED;

. 10) The aiding and abetting a breach of fiduciary duty claim against Hollingsworth, and that claim is hereby DISMISSED;

11) The claim for violation of the North Carolina Residential Mortgage Fraud Act, and that claim is hereby DISMISSED.

{154} The Defendants' motions with respect to the following claims are DENIED:

1)      The issue of whether a Certificate of Assumed Name was or should have been filed in Brunswick County;

2)      The breach of fiduciary duty claim against Hollingsworth;

3)      The constructive fraud claim against Hollingsworth;

4)      The fraud, fraud in the inducement, and negligent misrepresentation claims against Hollingsworth and Gary Lawrence;

5)      The unfair and deceptive trade practice claim against Hollingsworth;

6)      The equitable estoppel claim against Hollingsworth;

7)      The unjust enrichment claims against Hollingsworth, Viable and Lenhil;

8)      The civil conspiracy claims against Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hilla, and Viable;

9)      The joint enterprise, joint venture, and joint adventure claims against Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hilla, and Viable.

{155} The Court defers ruling on Defendants' motions as related to the following claims as against Hollingsworth, Gary Lawrence, Lennon, Lenhil, Lennon Hills, Burnett, Hilla, and Viable:

1)      The aiding and abetting a breach of fiduciary duty claim except as against Hollingsworth;

2)      The punitive damages claim.

{156} The Defendants' motions to strike is DENIED except as related to the allegations of misconduct by Frank, which allegations shall be stricken;

{157} The Plaintiffs' Motion is GRANTED.

{158} Pursuant to BCR 17, the Parties shall conduct their Case Management Meeting on or before Wednesday, February 1, 2012 and submit their Case Management Report to the Court on or before Thursday, February 16, 2011.  The Court will then convene a Case Management/Status Conference at 10:00 a.m. on Thursday, February 23, 2012.  The Conference shall be by teleconference absent a

request by mutual consent that it be held in person, in which event, it will be held at the Business Court in Greensboro.

IT IS SO ORDERED, this 18th day of January, 2012.