SilverDeer, LLC v. Berton, 2013 NCBC 24.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 3539

SILVERDEER, LLC; SILVERDEER )
BUILDERS, LLC; LAKEBOUND FIXED )
RETURN FUND, LLC; SILVERDEER )
MANAGEMENT, LLC; SILVERDEER )
CAROLINAS CARIBBEAN FUND I, LLC; )
PLANTATION PARTNERS, LLC; HOWARD )
A. JACOBSON, )
                Plaintiffs )
              )
           v. )
              )
ROBERT BERTON; ELDON BOLTON; )
ANDREA BURNS; EDWARD BURNS; CGR )
PARTNERS, LLC; STEVEN REINHARD; )
DALE CAREY; ROBERT GLOSSON; GAIL )
DWYER; STEPHEN DWYER; JAMES )
FARRELL; JANICE FARRELL; DANIEL )
GILLIS; WAYNE GOULD; ERIC M. LEVIN; )
BETSY SAWICKI; HOWARD SHAREFF; )
SHAREFF & ASSOCIATES DDS, PA; )
CONSTANCE UTECHT; MICHAEL )
UTECHT; ALAN WOLTMAN; RALPH J. )
DILEONE; VISIONQUEST WEALTH )
MANAGEMENT, LLC; VISIONQUEST )
CAPITAL, LLC and STEVEN C. PETERS, )
             Defendants )

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-

45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."),

and assigned to the undersigned Chief Special Superior Court Judge for Complex

Business Cases, comes before the court upon (a) VisionQuest Defendants' Motion to

Dismiss, (b) Berton Defendants' Motion to Dismiss, (c) CGR Defendants' Motion to

Dismiss and (d) Defendant Ralph J. DiLeone's Motion to Dismiss and Motion for

Judgment on the Pleadings (collectively, "Motions"), pursuant to Rules 12(b)(6) and 12(c), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having considered the Motions, oral arguments, briefs in support of and in opposition to the Motions and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED in part and DENIED in part for the reasons stated herein.

*Howard A. Jacobson, Esq. for Plaintiffs.*

*Graebe, Hanna & Sullivan, PLLC, by Christopher T. Graebe, Esq. for Defendants Stephen C. Peters, VisionQuest Wealth Management, LLC and VisionQuest Capital, LLC.*

*Law Offices of James C. White, PC, by James C. White, Esq. and Michelle M. Walker, Esq. for Defendants Robert Berton, Gail Dwyer, Stephen Dwyer, James Farrell, Janice Farrell, Eric M. Levin, Howard Shareff, Constance Utecht and Michael Utecht.*

*Brown & Bunch, PLLC, by Charles Gordon Brown, Esq. and James R. Baker, Esq. for Defendants CGR Partners, LLC, Steven Reinhard, Dale Carey and Robert Glosson.*

*Manning, Fulton & Skinner, PA, by Robert S. Shields, Esq. and J. Whitfield Gibson, Esq. for Defendant Ralph J. DiLeone.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[1]    On March 2, 2011, Plaintiffs SilverDeer, LLC ("SilverDeer"), SilverDeer Builders, LLC, Lakebound Fixed Return Fund, LLC ("Lakebound"), SilverDeer Management, LLC ("Management"), SilverDeer Carolinas Caribbean Fund I, LLC, Plantation Partners, LLC (collectively, "SilverDeer Companies") and Howard A. Jacobson ("Jacobson") filed a Complaint against Defendants Robert Berton, Eldon

Bolton, Andrea Burns, Edward Burns, Gail Dwyer, Stephen Dwyer, James Farrell, Janice Farrell, Daniel Gillis, Wayne Gould, Eric M. Levin, Betsy Sawicki, Howard Shareff, Shareff & Associates DDS, PA, Constance Utecht, Michael Utecht, Alan Woltman (collectively, "Berton Defendants"), CGR Partners, LLC, Steven Reinhard, Dale Carey, Robert Glosson (collectively, "CGR Defendants"), VisionQuest Wealth Management, LLC, VisionQuest Capital, LLC and Steven C. Peters ("Peters") (collectively, "VisionQuest Defendants") and Ralph J. DiLeone ("DiLeone").

[2]     The Complaint alleges ten causes of action ("Claim(s)"): First Cause of Action – Malicious Prosecution (by All Defendants except DiLeone); Second Cause of Action – Defamation (by all Defendants except DiLeone); Third Cause of Action – Fraud (by All Defendants); Fourth Cause of Action – Declaratory Judgment; Fifth Cause of Action – Negligence (by DiLeone); Sixth Cause of Action – Breach of Contract (by VisionQuest Defendants); Seventh Cause of Action – Fraud (by VisionQuest Defendants); Eighth Cause of Action – Breach of Fiduciary Duties (by Peters); Ninth Cause of Action – Unfair and Deceptive Trade Practices (by All Defendants); Tenth Cause of Action – Tortious Interference with Prospective Economic Advantage (by All Defendants).

[3]     On May 6, 2011, VisionQuest Defendants filed a Motion to Dismiss ("VisionQuest Motion"), seeking dismissal of the entirety of the Complaint as alleged against them, pursuant to Rule 12(b)(6).

[4]     On May 6, 2011, Berton Defendants filed a Motion to Dismiss ("Berton Motion"), seeking dismissal of the entirety of the Complaint as alleged against them, pursuant to Rule 12(b)(6).[1]

[5]     On May 13, 2011, CGR Defendants filed a Motion to Dismiss ("CGR Motion"), seeking dismissal of the entirety of the Complaint as alleged against them, pursuant to Rule 12(b)(6).

[6]     On May 10, 2011, DiLeone filed his Answer, which also contains a motion for dismissal of the Complaint as to him, pursuant to Rule 12(b)(6).  On June 10, 2011, DiLeone also filed a Motion for Judgment on the Pleadings (collectively, DiLeone's Rule 12(b)(6) and Rule 12(c) motions are referred to herein as the "DiLeone Motion").

[7]     Subsequently, all Defendants filed separate motions to stay discovery until determination of the pending Rule 12 Motions.

[8]     On August 11, 2011, the court entered an Order granting Defendants' motions to stay discovery.

[9]     The court heard oral arguments on the Motions.  At the hearing, the court announced orally its rulings on the Motions with respect to certain Claims and Defendants.  Those previous rulings are reflected herein.

[10]     On March 22, 2012, Plaintiffs filed a Motion to Lift Stay on Discovery.  On March 23, 2012, the court entered an Order lifting the stay on discovery, limited to Claims and Defendants not dismissed orally at the hearing on the Motions.

---

[1] On May 19, 2011, Defendant Wayne Gould ("Gould") filed a Motion to Dismiss, which joins and incorporates by reference the Berton Motion.  On June 15, 2011, and August 3, 2011, Defendants Betsy Sawicki ("Sawicki") and Daniel Gillis ("Gillis"), respectively, filed substantially similar Motions to Dismiss. For purposes of this Opinion and Order, the court will consider the above-mentioned motions of Gould, Sawicki and Gillis as part of the Berton Motion.  To the extent the Berton Motion is granted or denied, the above motions are granted or denied to the same extent.

[11]    The Motions have been fully briefed and are ripe for determination.

II.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[12]    This case arises out of two previous civil actions filed by a majority of the named Defendants, their managers and related companies.

[13]    The two previous actions are captioned *Berton, et al. v. Jacobson, et al.*, Wake County No. 09 CVS 10870 ("Berton Action") and *Shareff v. Lakebound Fixed Return Fund LLC, et al.*, Wake County No. 09 CVS 9983 ("Shareff Action") (both filed on or about May 21, 2009) (collectively, "Previous Actions").[2]  All Plaintiffs in this action were named defendants in the Berton Action.  Plaintiffs SilverDeer, Management, Lakebound and Jacobson in this action were named defendants in the Shareff Action.

[14]    The Previous Actions were based on alleged mismanagement that resulted in a failed multimillion dollar real estate investment project.

[15]    All Defendants in this action, with the exception of DiLeone, acted in concert and by agreement to file the Previous Actions.[3]  Further, Defendants knew the allegations to be materially false and lacking probable cause at the relevant time.[4]

[16]    In March of 2010, certain Defendants in this action (those who were plaintiffs in the Previous Actions) entered into settlement negotiations with counsel for Richard Deckelbaum ("Deckelbaum"), a member-manager of SilverDeer.[5]  Deckelbaum

---

[2] Compl. ¶¶ 28-31.
[3] *Id.* ¶¶ 32, 35.
[4] *Id.*
[5] *Id.* ¶¶ 30, 48-50.

retained DiLeone, who served as his counsel during the relevant settlement negotiation time period.

[17]     Deckelbaum was one of SilverDeer's two member-managers (Jacobson was the other member-manager), and Deckelbaum purportedly had the authority, under SilverDeer's operating agreement, to bind the company in a settlement.

[18]     Those negotiations resulted in Deckelbaum signing settlement agreements ("Settlement Agreements") with on behalf of SilverDeer for the purported settlement with certain plaintiffs in the Previous Actions ("Settlement").[6]

[19]     Defendants knew that SilverDeer was represented in the Previous Actions by separate counsel and did not consult with SilverDeer's counsel during the Settlement negotiations with Deckelbaum.[7]

[20]     Certain Defendants voluntarily dismissed their Claims in the Previous Actions based upon the procurement of the purported Settlement with SilverDeer.

[21]     Plaintiffs in this action (SilverDeer Companies and Jacobson) now allege various tort-based Claims, among other things, against Defendants, arising from the filing and purported Settlement of the Previous Actions.

---

[6] *Id.*
[7] *Id.* ¶ 51.

III.

DISCUSSION

A.

Legal Standard

[22]    All Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6), which is appropriate when the complaint fails to state a claim upon which relief can be granted.

[23]    When deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[24]    A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief.  *Sutton*, 277 N.C. at 108.

[25]    Defendant DiLeone also seeks dismissal of the Complaint pursuant to Rule 12(c), which is appropriate after the pleadings are closed and when the movant establishes that "no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Groves v. Cmty. Hous. Corp. of Haywood*

*Cnty.*, 144 N.C. App. 79, 86-87 (2001) (citing *Minor v. Minor*, 70 N.C. App. 76, 78 (1984)). Further, the court will "view the facts and permissible inferences in the light most favorable to the non-moving party [ ], taking all well-pleaded factual allegations in the non-moving party's pleadings as true." *Id.* (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 136-37 (1974)) (internal quotations omitted). The standard of review for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Akzo Nobel Coatings Inc. v. Rogers*, 2011 NCBC 41, ¶ 32 (N.C. Super. Ct. Nov. 3, 2011). The function of Rule 12(c) is to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit" as a matter of law. *Id.* (quoting *Ragsdale*, 286 N.C. at 137).

[26] The court may consider documents that are attached to and incorporated within a complaint, when ruling on a Rule 12(b)(6) or 12(c) motion, without converting it into a motion for summary judgment. *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007).

B.

First Claim – Malicious Prosecution

[27] Plaintiffs' First Claim alleges malicious prosecution against all Defendants, with the exception of DiLeone.

[28] In order to state a claim for malicious prosecution, the plaintiff must establish that (a) the defendant initiated the earlier proceedings, (b) he did so maliciously, (c) he lacked probable cause, (d) the earlier proceeding terminated in the plaintiff's favor and (e) the plaintiff suffered "special damages." *Stanback v. Stanback*, 297 N.C. 181, 202-03 (1979). To sufficiently plead special damages, the plaintiff must

allege that the prior prosecution resulted in a "substantial interference with either his person or his property," such as an arrest or injunction. *Id.* at 203 (noting that a showing of special damages "is an essential, substantive element of the claim"). Further, the North Carolina Court of Appeals upheld the dismissal of a malicious prosecution claim where the plaintiff alleged "that he suffered injury to his reputation, embarrassment, loss of work and leisure time and that he has incurred expenses in defending the claim." *Stikeleather v. Willard*, 83 N.C. App. 50, 51-52 (1986).

[29]   Here, the Complaint fails to allege special damages sufficient to support a malicious prosecution claim. At best, Plaintiffs allege that they suffered harm to reputation and they have been economically injured in an amount to be proved at trial.[8] Following *Stikeleather*, such allegations "fail to allege any substantial interference with either plaintiff's person or property as contemplated by the special damages requirement" adopted in *Stanback*. As such, Plaintiffs' Claim for malicious prosecution fails to state a claim upon which relief can be granted and the Motions as to that Claim should be GRANTED.

C.

Second Claim – Defamation

[30]   Plaintiffs' Second Claim alleges defamation against all Defendants, with the exception of DiLeone.

[31]   The statute of limitations for defamation is one year from publication. G.S. 1-54(3).

---

[8] Compl. ¶¶ 35, 38.

[32]     The Complaint alleges that Defendants defamed Plaintiffs "[f]rom 2008 and at least through the filing of the [Previous Actions] . . . ."[9]  The Previous Actions were filed in May 2009.  The Complaint in this matter was filed on March 2, 2011, which is well over one year from the latest-identified publication of an alleged defamatory statement.

[33]     Accordingly, Plaintiffs' Claim for defamation is time-barred on its face and the Motions as to that Claim should be GRANTED.

D.

Third Claim – Fraud

[34]     Plaintiffs' Third Claim alleges fraud against all Defendants.  Plaintiffs allege that all Defendants committed fraud in connection with the Settlement Agreements executed in the Previous Actions.  More specifically, Plaintiffs allege that Deckelbaum and the Defendants entered into Settlement Agreements affecting the rights of SilverDeer, then fraudulently concealed those negotiations from Jacobson.[10]

[35]     Plaintiffs' allegations make clear that Berton Defendants and CGR Defendants were parties in the Previous Actions and participated in the Settlement negotiations, along with Defendant DiLeone, who helped facilitate the Settlement as counsel for Deckelbaum.[11]  However, Defendants involved in those Settlement negotiations contend that Plaintiffs have failed to state a claim for fraudulent concealment with the requisite level of particularity.  In addition, Defendants contend that North Carolina law does not recognize a duty to disclose settlement negotiations under the circumstances of this case.

---

[9] *Id.* ¶ 41.
[10] *Id.* ¶ 53.
[11] *Id.* ¶¶ 48-50.

[36]     As against the Berton Defendants, CGR Defendants and Defendant DiLeone, Plaintiffs have sufficiently stated a claim for fraud under the standards articulated by Rule 12(b)(6), Rule 9 and *Sutton v. Duke*, 277 N.C. 94, 98 (1970). Accordingly, the Berton Motion, CGR Motion and DiLeone Motion as to Plaintiffs' Third Claim for fraud should be DENIED.

[37]     As to the VisionQuest Defendants, they were not parties to the Berton Action and there is no allegation that they participated as non-parties in the alleged fraudulent Settlement of the Berton Action.  While VisionQuest Defendants were named defendants in the Shareff Action, the Complaint here does not allege that they played any role in the purported Settlement of the Shareff Action.[12]  Moreover, there is no mention of VisionQuest Defendants in Plaintiffs' Third Claim for fraud.  Thus, it appears that Plaintiffs intended to raise this fraud Claim against all Defendants, with the exception of VisionQuest Defendants.  If Plaintiffs intended to include VisionQuest Defendants in its fraud Claim, then the Claim fails to meet the Rule 9 particularity requirements as to VisionQuest Defendants.

[38]     Accordingly, the VisionQuest Motion as to Plaintiffs' Third Claim for fraud should be GRANTED.

E.

Fourth Claim – Declaratory Judgment

[39]     Plaintiffs' Fourth Claim seeks a declaratory judgment that the Settlement Agreements from the Previous Actions are void and unenforceable.  Specifically, Plaintiffs allege that the Settlement Agreements "were procured through fraud and direct

_____

[12] The court notes that it dismissed VisionQuest Defendants from the Shareff Action in open court on October 23, 2009.  The alleged fraudulent Settlement of the Shareff Action occurred more than six months later in May/June 2010.

violations of the Rules of Professional Conduct applicable to attorneys and, therefore, is [sic] void and unenforceable."[13]

[40]    Defendants contend that a declaratory judgment action is not a proper avenue for voiding the Settlement Agreements.

[41]    "The purpose of the Declaratory Judgment Act, [G.S. 1-253 *et seq.*,] is to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations . . . ." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287 (1964) (quoting *Walker v. Phelps*, 202 N.C. 344, 349 (1932)) (internal quotations omitted).  Declaratory judgment is not available to void or nullify a conveyance or written instrument.  *Town of Nags Head v. Tillett*, 314 N.C. 627, 629 (1985); *Farthing v. Farthing*, 235 N.C. 634, 635 (1952)) ("The Declaratory Judgment Act is designed to provide an expeditious method of procuring a judicial decree construing wills, contracts, and other written instruments and declaring the rights and liabilities of parties thereunder.  It is *not a vehicle for the nullification* of such instruments.") (emphasis in original); *A. Perrin Dev. Co. v. Ty-Par Realty, Inc.*, 193 N.C. App. 450, 452 (2008).

[42]    Here, it appears that Plaintiffs are attempting to use the Declaratory Judgment Act as a "vehicle" to nullify the Settlement Agreements.  In *Farthing* and *Tillett*, the Supreme Court held that such an attempt to void a contract is outside the scope of the Declaratory Judgment Act.  *Farthing*, 235 N.C. at 635; *Tillett*, 314 N.C. at 396.

[43]    Accordingly, the court CONCLUDES that Plaintiffs' Claim for declaratory judgment, which seeks a declaration that the Settlement Agreements are void and

---

[13] Compl. ¶ 59.

unenforceable, fails to state a claim upon which relief can be granted, and the Motions as to that Claim should be GRANTED.[14]

F.

Fifth Claim – Negligence

[44]    Plaintiffs' Fifth Claim alleges negligence against only Defendant DiLeone. Plaintiffs allege that DiLeone committed negligence by failing to exercise reasonable care when he negotiated the Settlement Agreements on behalf of SilverDeer.

[45]    Defendant DiLeone contends that he did not owe a duty of care to SilverDeer because SilverDeer was not a client.[15]  Further, Defendant DiLeone argues that Plaintiffs only allege that he violated the Rules of Professional Conduct, which he contends does not amount to a breach of duty.[16]

[46]    To state a claim of negligence in a legal malpractice action, a plaintiff must sufficiently allege that (a) the attorney breached the duties owed to his client as established in *Hodges v. Carter*, 239 N.C. 517 (1954) and (b) the negligence proximately caused damage to the plaintiff.  *Summer v. Allran*, 100 N.C. App. 182 (1990).  The duties promulgated under *Hodges* require that an attorney:

> (1) possess[ ] the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) [ ] exert his best judgment in the prosecution of the litigation entrusted to him; and (3) [ ] exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.

*Hodges*, 239 N.C. at 519.

---

[14] The court notes that Plaintiffs failed to respond to Defendants' briefs and arguments with regard to the Claim for declaratory judgment.
[15] Br. Supp. DiLeone's Mot. J. Pleadings 7-8.
[16] *Id.*

[47]    Here, Plaintiffs have alleged that DiLeone provided legal services to SilverDeer, which necessarily created legal duties owed by DiLeone to SilverDeer.[17] Specifically, DiLeone allegedly reviewed and revised a draft of the Settlement Agreements on behalf of SilverDeer in the Previous Actions.[18]

[48]    The court agrees with DiLeone that an alleged violation of the Rules of Professional Conduct does not itself give rise to a negligence-based cause of action against an attorney, nor should it create a presumption that a legal duty has been breached. *Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 421 (2002; *see also R. Prof. Conduct N.C. State B*. 0.2[7]. Here, Plaintiffs allege that DiLeone breached the Rules of Professional Conduct, which alone is insufficient to state a legal malpractice claim.[19] However, Plaintiffs also allege that DiLeone violated a legal duty owed to SilverDeer. Specifically, the Complaint alleges that DiLeone, before facilitating the Settlement, (a) failed to investigate the facts of the Previous Actions, (b) failed to consult with SilverDeer's retained counsel and (c) failed to consider SilverDeer's ability to satisfy the payment obligations set forth in the Settlement Agreements.[20] In sum, Plaintiffs sufficiently allege that DiLeone failed to exercise reasonable care in performing legal services, as contemplated by *Hodges*. Further, Plaintiffs allege sufficiently that SilverDeer was injured by the Settlement of the Previous Actions, which was facilitated by DiLeone.[21]

[49]    Accordingly, the court CONCLUDES that Plaintiffs have sufficiently alleged their negligence Claim against Defendant DiLeone under the standards of Rule

---

[17] Compl. ¶¶ 62, 64, 66.
[18] *Id.* ¶ 62.
[19] *Id.* ¶ 65.
[20] *Id.* ¶ 66.
[21] *Id.* ¶ 68.

12(b)(6)[22] and *Sutton v. Duke*, 277 N.C. 94 (1970). As such, the DiLeone Motion as to that Claim should be DENIED.

G.

Sixth Claim – Breach of Contract

[50] Plaintiffs' Sixth Claim alleges breach of contract against only VisionQuest Defendants. Specifically, there are two contracts between certain VisionQuest Defendants and SilverDeer Companies that allegedly were breached.

[51] VisionQuest Defendants seek dismissal of Plaintiffs' breach of contract Claim on the grounds that the provisions of the contracts, on their face, do not create obligations that were breached.

[52] At the outset, Plaintiffs failed to attach to the Complaint the contracts in question, which are (a) the November 13, 2007 written contract ("2007 Contract") and (b) the May 15, 2008 written contract ("2008 Contract") (collectively, "Contracts").[23] VisionQuest Defendants attached those documents, along with a related termination letter dated May 23, 2008, for consideration in conjunction with the VisionQuest Motion. The court will consider such documentation as referenced in the Complaint without converting the matter into one for summary judgment under Rule 56. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59 (2001) (allowing consideration on a motion to dismiss of documents referenced by the complaint, but attached by the defendant).

---

[22] The same conclusion holds true with regard to Rule 12(c).
[23] The court acknowledges that (a) VisionQuest Wealth Management, LLC, SilverDeer and Lakebound are the specific parties to the 2007 Contract, and (b) VisionQuest Capital, LLC and SilverDeer are the specific parties to the 2008 Contract.

[53]     After reviewing the Contracts, it is apparent to the court that the allegations of the Complaint misstate the actual written contractual obligations of VisionQuest Defendants.

[54]     Plaintiffs allege the following breaches of the 2007 Contract: (a) failure to obtain necessary licenses, (b) failure to raise $25,000,000, (c) failure to assist Lakebound to administer funds received and (d) encouragement of investors to file the Previous Actions.[24]

[55]     However, none of these alleged breaches are supported by the actual 2007 Contract.  First, nothing in the 2007 Contract required that any particular licenses be held by VisionQuest Defendants.  Second, as to the alleged obligation to raise $25,000,000, the 2007 Contract only required that VisionQuest Defendants "act as a consultant to [SilverDeer] in the raising of Twenty-Five Million Dollars ($25,000,000.00). As a consultant, VisionQuest will provide advice in the structuring, acquiring, and administration of these funds."[25]  Clearly, this language does not create an affirmative obligation upon VisionQuest Defendants to raise $25,000,000.  Third, the 2007 Contract contains no obligation whereby VisionQuest Defendants are to assist in administration of the Lakebound fund.  Finally, nothing in the 2007 Contract discusses any rights or obligations related to the encouragement or discouragement of lawsuits by third parties against SilverDeer.  Accordingly, Plaintiffs' alleged breaches of contract do not reconcile with the plain language of the 2007 Contract.  On the face of the Complaint, Plaintiffs have failed to state a breach of contract Claim with regard to the 2007 Contract.

---

[24] Compl. ¶¶ 75-77, 80.
[25] VisionQuest Defs. Mot. Dismiss Ex. 3

[56]     As for the 2008 Contract, Plaintiffs' breach of contract Claim fails for the same reasons as the 2007 Contract.

[57]     Accordingly, the court CONCLUDES that the VisionQuest Motion as to Plaintiffs' Sixth Claim for breach of contract should be GRANTED.

H.

Seventh Claim – Fraud against VisionQuest Defendants

[58]     Plaintiffs' Seventh Claim alleges that the VisionQuest Defendants defrauded them by making the representations contained and embodied in the 2007 Contract and by failing to fulfill those representations.

[59]     VisionQuest Defendants contend that this Claim is merely a disguised breach of contract claim, and even if it were a fraud claim, the allegations fail to meet the Rule 9 particularity requirements.

[60]     Indeed, "an independent tort action in a breach of contract action . . . [must involve] some other aggravating element outside the breach of contractual duties." *Garlock v. Hilliard*, 2000 NCBC 11, ¶ 33 (N.C. Super. Ct. Aug. 22, 2000) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)); *see also N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81 (1978) ("Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." (citing *Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 266 N.C. 134 (1966))).  An independent tort may arise out of a breach of contract only in carefully circumscribed instances where the tort is identifiable and distinct from the primary breach of contract claim. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111-12 (1976).  "The mere failure to carry out a promise in contract . . . does not support a

tort action for fraud." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994) (citing *Hoyle v. Bagby*, 253 N.C. 778, 781 (1961)).

[61]     Here, contrary to Plaintiffs' contention, their fraud Claim against VisionQuest Defendants is not identifiable and distinct from the primary breach of contract Claim.  Plaintiffs simply allege that VisionQuest Defendants represented that they would perform under the 2007 Contract, but never intended to do so.[26]

[62]     On the face of the Complaint, Plaintiffs' fraud Claim against VisionQuest Defendants appears to be a breach of contract claim, merely styled as a fraud.[27] However, reading the Complaint in a light most favorable to Plaintiffs, the court will analyze those allegations as a fraud claim.

[63]     Rule 9(b) requires that a claim for fraud be pled with particularity and "[m]ere generalities and conclusory allegations of fraud will not suffice."  *Sharp v. Teague*, 113 N.C. App. 589, 597 (1994) (quoting *Moore v. Wachovia Bank & Trust Co.*, 30 N.C. App. 390, 391 (1976)).  The pleader must allege the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations."  *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39 (2006) (quoting *Terry v. Terry*, 302 N.C. 77, 85 (1981)) (internal quotations omitted).

[64]     Here, Plaintiffs do not identify how or why any particular statement is thought to have been false.  The content of the alleged fraudulent representation is presumably somewhere in the 2007 Contract, but is not identified with any particularity. Aside from a conclusory allegation of fraudulent intent, Plaintiffs only assert the

---

[26] Compl. ¶¶ 84-85.
[27] Tellingly, the fraud Claim against VisionQuest Defendants even includes the phrase "breach of contract" twice.  *Id.* ¶¶ 88, 91.

nonperformance of a promissory representation, which is insufficient in itself to establish intent. *Brandis v. Lightmotive Fatman, Inc.*, 115 N.C. App. 59, 67 (1994). Accordingly, the court CONCLUDES that Plaintiff has not satisfied the heightened pleading standard for fraud under Rule 9, and the VisionQuest Motion as to the Seventh Claim should be GRANTED.

I.

Eighth Claim – Breach of Fiduciary Duty

[65] Plaintiffs' Eighth Claim alleges breach of fiduciary duty against only Defendant Peters.

[66] VisionQuest Defendants (collectively on behalf of Peters) contend that no duty was owed to Plaintiffs.[28] Further, VisionQuest Defendants argue that Plaintiffs fail to allege that Peters took advantage of any relationship of trust to benefit himself.[29]

[67] "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 472 (2009) (quoting *Dalton v. Camp*, 353 N.C. 647, 651 (2001)). A *de facto* fiduciary relationship has been defined broadly as a relationship in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . ." *Dalton*, 353 N.C. at 651-52. Domination and influence are essential components in a fiduciary relationship. *Id.* "Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *S.N.R. Mgmt.*

---

[28] VisionQuest Defs. Br. Supp. Mot. Dismiss 13-14.
[29] *Id.* 15

*Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (2008) (quoting *Broussard*, 155 F.3d at 348). Additionally, parties to a contract do not become each other's fiduciaries, but only owe each other the duties specified by the terms of the contract. *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992).

[68]    Plaintiffs have not alleged facts sufficient to show the existence of *de facto* fiduciary relationship between Peter and Plaintiffs, nor have Plaintiffs argued that a *de facto* fiduciary relationship actually existed. Instead, Plaintiffs seem to argue that a *de jure* fiduciary relationship existed by virtue of an investment advisor-client relationship between Peters and Plaintiffs.[30]

[69]    Plaintiffs and VisionQuest Defendants cite no case law, nor has the court located any relevant authority in North Carolina holding that a relationship of an investment advisor-client or consultant-client creates a *de jure* fiduciary relationship. Instead, Plaintiffs merely cite G.S. 78C *et seq.* for the proposition that an investment advisor owes a duty of disclosure to his clients, which they argue in turn creates a *de jure* fiduciary relationship.

[70]    Indeed, "North Carolina recognizes certain *de jure* fiduciary relationships which arise as a matter of law because of the nature of the relationship, 'such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and cestui que trust.'" *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC 7, ¶ 89 (N.C. Super. Ct. Jan. 18, 2012) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)).

[71]    The North Carolina Court of Appeals, in *Harrold v. Dowd*, 149 N.C. App. 777 (2002), held that an accountant-client relationship is not an inherently fiduciary one

---

[30] Pls. Br. Opp'n Defs. Mot. Dismiss 6.

and the mere allegations of the accountant's failure to properly advise his client were insufficient to support a claim for breach of fiduciary duty. *Id.* at 784. ("We have found no case stating that the relationship between accountant and client is *per se* fiduciary in nature"). Consequently, the court of appeals upheld the trial court's Rule 12(b)(6) dismissal of the breach of fiduciary duty claim in that case. *Id*.

[72]    Similar to *Harrold*, here, Plaintiffs allege that Peters and VisionQuest Defendants failed to properly advise Plaintiffs, specifically certain SilverDeer Companies and their members, by "ignoring the best interests of Lakebound" and "putting the interests of [VisionQuest] ahead of the interests of [Lakebound]."[31]

[73]    In the absence of any North Carolina appellate authority holding that an investment advisor-client relationship is a *de jure* fiduciary one, the court finds the *Harrold* holding instructive and CONCLUDES that no fiduciary relationship existed between Peters and Plaintiffs. The mere assertion of an investment advisor-client relationship or reliance upon G.S. 78C *et seq.* does not give rise to a *de jure* fiduciary relationship. Further, without sufficient alleged circumstances showing the existence of a relationship of confidence and trust (i.e., a *de facto* fiduciary relationship), Plaintiffs' Claim for breach of fiduciary duty against Peters must fail. Accordingly, the court further CONCLUDES that the VisionQuest Motion as to Plaintiffs' Eighth Claim should be GRANTED.

J.

Ninth Claim – Unfair and Deceptive Trade Practices

[74]    Plaintiffs' Ninth Claim alleges unfair and deceptive trade practices against all Defendants.

---

[31] Compl. ¶ 100.

[75]    In order to state a claim for unfair or deceptive trade practices in North Carolina, the plaintiff must show that the defendant committed an unfair or deceptive act or practice, in or affecting commerce and that the plaintiff was injured as a result. *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439 (2005).  An unfair trade practice is one that "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Edwards v. West*, 128 N.C. App. 570, 574 (1998) (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263 (1980)) (internal quotations omitted).  Determining whether an act or practice is unfair or deceptive is a question of law and such claims are regularly dismissed upon a Rule 12(b)(6) motion.

[76]    On its face, Plaintiffs' Chapter 75 claim is derivative of their other Claims, specifically the fraud claims,[32] and therefore rises and falls with those Claims. *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 255 (2002) (affirming the dismissal of a Chapter 75 claim where it was derivative of a constructive fraud claim that was dismissed pursuant to Rule 12(b)(6)).  As such, the disposition of Plaintiffs' fraud Claim as to each set of Defendants determines the disposition of Plaintiffs' Chapter 75 Claim as to those same Defendants.

1.

Berton Defendants and CGR Defendants

[77]    As mentioned *supra*, Plaintiffs have stated a Claim for fraud against Berton Defendants and CGR Defendants.  As such, the alleged fraud is sufficient to support Plaintiffs' Chapter 75 Claim against those same Defendants.  *Compton v. Kirby*,

---

[32] *Id.* ¶ 106.

157 N.C. App. 1, 20 (2003) (recognizing that conduct constituting a fraud-based claim is also sufficient to support a Chapter 75 claim).

[78]    Accordingly, the court CONCLUDES that the Berton Motion and CGR Motion as to Plaintiffs' Claim for unfair and deceptive trade practices should be DENIED.

## 2.

### VisionQuest Defendants

[79]    As alleged against VisionQuest Defendants, Plaintiffs' Chapter 75 Claim fails because all other Claims against VisionQuest Defendants fail.

[80]    Accordingly, the court CONCLUDES that the VisionQuest Motion as to Plaintiffs' Claim for unfair and deceptive trade practices should be GRANTED.

## 3.

### Defendant DiLeone

[81]    As alleged against Defendant DiLeone, Plaintiffs' Chapter 75 Claim fails because Defendant DiLeone is an attorney and excepted from liability under G.S. 75-1.1(b).  Under Chapter 75, "commerce" includes "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession."  G.S. 75-1.1(b).  "Thus, professional services rendered by an attorney in the course of his business are exempt under the statute and may not form the basis of an unfair or deceptive trade practices claim."  *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 36 (2002) (citing *Sharp v. Gailor*, 132 N.C. App. 213, 217 (1999)).

[82]     Here, Plaintiffs allege that DiLeone committed attorney malpractice, by acting negligently in the course of his business as an attorney, and that such conduct constituted a violation of Chapter 75.[33]

[83]     Accordingly, DiLeone's actions, as alleged in the Complaint, are not deemed to be "in or affecting commerce" and therefore he cannot be held liable under Chapter 75.  Thus, the court CONCLUDES that the DiLeone Motion as to Plaintiffs' Claim for unfair and deceptive trade practices should be GRANTED.

K.

Tenth Claim – Tortious Interference with Prospective Economic Advantage

[84]     Plaintiffs' Tenth Claim alleges tortious interference with prospective economic advantage against all Defendants.

[85]     To state a claim for tortious interference with prospective economic advantage, a plaintiff must show that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff and which would have been entered into absent the defendant's interference.  *Dalton v. Camp*, 138 N.C. App. 201, 211 (2000), *rev'd on other grounds*, 353 N.C. 647 (2001).  The plaintiff must "assert some measurable damages resulting from defendant's allegedly tortious activities, i.e., what 'economic advantage' was lost to plaintiffs as a consequence of defendants' conduct."  *Walker v. Sloan*, 137 N.C. App. 387, 394 (2000) (affirming the Rule 12(b)(6) dismissal of a tortious interference with prospective economic advantage claim where the plaintiff failed to identify a specific contract that would have been made but for the defendants' conduct); *see also Daimlerchrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585 (2002) (recognizing that the plaintiff "failed to identify any particular contract that a

---

[33] *Id.* ¶¶ 62-68, 106.

third party has been induced to refrain from entering into" with the plaintiff; thus, the plaintiff did not establish a likelihood of success on the merits of its tortious interference with prospective economic advantage claim).

[86]    Here, Plaintiffs have pleaded only generalized conjecture regarding a prospective economic advantage, and they have failed to identify a person or entity with whom they were unable to enter into a contract.. Thus, this Claim is insufficiently pleaded and fails for that reason. Accordingly, the court CONCLUDES that Plaintiffs have failed to state a Claim for tortious inference with prospective economic advantage against all Defendants, and all Defendants' Motions as to this Claim should be GRANTED.

L.

Leave to Amend

[87]    Plaintiffs' responsive brief to the Motions raises the argument that they should be given leave to amend the Complaint if the court determines that any allegations fail to state a claim.[34]  However, to date, Plaintiffs have neglected to file a formal motion to amend.[35]

[88]    Accordingly, the court CONCLUDES that Plaintiffs' request for leave to amend is not deemed a formal Motion, pursuant to BCR 15, and is not before the court for determination.  Even if such a request were deemed a Motion, the court

---

[34] Pls. Br. Opp'n Defs. Mot. Dismiss 4 n.1.

[35] At a hearing on the Motions, the court advised Plaintiffs' counsel that Plaintiffs would need to submit a formal motion to amend before the court would consider the allegations of a First Amended Complaint for purposes of determining the instant Motions.  Plaintiffs did not do so.  Instead, on January 5, 2012, Plaintiffs filed their First Amended Complaint without consent of the parties or leave of court.  On March 23, 2012, the court struck Plaintiffs' First Amended Complaint from the record because it was procedurally improper.

CONCLUDES, in its discretion, that an amendment would be futile under the circumstances of this civil action and should be DENIED.

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[89]    Defendants VisionQuest Wealth Management, LLC, VisionQuest Capital, LLC and Steven C. Peters' Motion to Dismiss is GRANTED as to all Plaintiffs' Claims, and as to said Defendants, this civil action is DISMISSED.

[90]    The Berton Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' (a) First Claim – Malicious Prosecution, (b) Second Claim – Defamation, (c) Fourth Claim – Declaratory Judgment and (d) Tenth Claim – Tortious Interference with Prospective Economic Advantage.  Accordingly, as to said Defendants each of those Claims is DISMISSED.

[91]    The Berton Defendants' Motion to Dismiss is DENIED as to Plaintiffs' (a) Third Claim – Fraud and (b) Ninth Claim – Unfair and Deceptive Trade Practices.

[92]    The CGR Partners Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' (a) First Claim – Malicious Prosecution, (b) Second Claim –  Defamation, (c) Fourth Claim – Declaratory Judgment and (d) Tenth Claim – Tortious Interference with Prospective Economic Advantage.  Accordingly, as to said Defendants each of those Claims is DISMISSED.

[93]    The CGR Partners Defendants' Motion to Dismiss is DENIED as to Plaintiffs' (a) Third Claim – Fraud and (b) Ninth Claim – Unfair and Deceptive Trade Practices.

[94]    Defendant DiLeone's Motion to Dismiss and Motion for Judgment on the Pleadings is GRANTED as to Plaintiffs' (a) Ninth Claim – Unfair and Deceptive Trade

Practices and (b) Tenth Claim – Tortious Interference with Prospective Economic Advantage. Accordingly, as to said Defendant each of those Claims is DISMISSED.

[95] Defendant DiLeone's Motion to Dismiss and Motion for Judgment on the Pleadings is DENIED as to Plaintiffs' (a) Third Claim – Fraud and (b) Fifth Claim – Negligence.

[96] On May 21, 2013, at 11:00 a.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a Case Management Conference with all remaining parties to this action. The parties shall submit a Case Management Report on or before May 17, 2013.

This the 24th day of April, 2013.